UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-CV-23362-LEIBOWITZ/AUGUSTIN-BIRCH

**PENROD BROTHERS, INC.,**

 **Plaintiff,**

v.

**THE CITY OF MIAMI BEACH, FLORIDA,**

 **Defendant.**
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

 This matter comes before the Court on Defendant The City of Miami Beach, Florida's Motion to Dismiss Fourth Amended Complaint [DE 28] and Unopposed Motion for Hearing [DE 42]. The Honorable David S. Leibowitz, United States District Judge, referred both Motions to the undersigned United States Magistrate Judge for appropriate disposition. DE 43. Plaintiff Penrod Brothers, Inc. responded to the Motion to Dismiss, and Defendant replied. DE 31; DE 37.

 The Court has carefully reviewed the parties' briefing and the record and is fully advised in the premises. For the reasons set forth below, the Court recommends that Defendant's Motion to Dismiss [DE 28] be **DENIED** but that the Fourth Amended Complaint [DE 25] be **DISMISSED WITHOUT PREJUDICE**. Defendant's Unopposed Motion for Hearing [DE 42] is **DENIED**.

### I.  Plaintiff's Allegations

 Plaintiff filed a Fourth Amended Complaint following Defendant's removal of this case from state court. DE 1; DE 25. Plaintiff alleges in the Fourth Amended Complaint that, for more than three decades, it has operated "a world-renowned high-end beach club" called Nikki Beach at One Ocean Drive, Miami Beach, on public property that Defendant leased to Plaintiff (the "One

Ocean Drive property"). DE 25 ¶¶ 3, 32–36. Plaintiff's lease of the One Ocean Drive property will expire on May 6, 2026. *Id.* ¶ 37. Plaintiff contends that, in the summer or fall of 2022, Defendant began to take actions to ensure that a different entity, Boucher Brothers Miami Beach, LLC ("Boucher"), will become the next operator of the One Ocean Drive property when Plaintiff's lease expires. *Id.* ¶¶ 55–66.

Plaintiff alleges that, during Defendant's April 28, 2023 City Commission meeting, the City Commission passed Resolution No. 2023-32586 (the "April 28 Resolution"). *Id.* ¶ 75. The April 28 Resolution would have allowed Defendant to avoid the formal, public, and competitive bidding process that Defendant's Charter and Code mandate for leases of public property and to award operation of the One Ocean Drive property to Boucher. *Id.* ¶¶ 74, 76, 78, 82.

Plaintiff next alleges that, during Defendant's May 17, 2023 City Commission meeting, the City Commission rescinded the April 28 Resolution and passed Resolution No. 2023-32612 (the "May 17 Resolution") in its place. *Id.* ¶ 81. The May 17 Resolution directed Defendant to request bids for the operation of the One Ocean Drive property. *Id.* ¶¶ 81, 88–89. Defendant did so in June 2023 by issuing Request for Proposals No. 2023-479-KB (the "RFP"). *Id.* ¶ 90. The RFP had an expedited response deadline that eventually was extended to August 31, 2023, at 3:00 p.m. *Id.* ¶¶ 92, 159, 174. Bids were to be submitted via an online platform operated by an entity called Periscope. *Id.* ¶ 174.

Plaintiff contends that it submitted a bid that was "timely and in compliance with all relevant instructions." *Id.* ¶ 163. Plaintiff "submitted its bid as instructed using the Periscope platform prior to the August 31, 2023, 3:00 p.m. deadline." *Id.* ¶ 174; *see also id.* ¶ 177 ("[Defendant] had full access to [Plaintiff's] entire bid package, time-stamped, on Periscope, before the 3:00 p.m. deadline."). To submit the bid, Plaintiff "selected the final 'confirmation'

button on the Periscope platform, and its bid on Periscope was 'confirmed.'" *Id.* ¶ 175.  However, "Periscope did not generate a confirmation."  *Id.*  "Suspecting error, [Plaintiff] immediately and urgently contacted [Defendant], and then made numerous submissions of copies of its bid by other means (including email, ShareFile, and hand-delivery)."  *Id.*; *see also id.* ¶ 176 ("Within minutes of the deadline, [Plaintiff] had provided [Defendant] backup/courtesy copies of its entire bid package on a secure electronic platform via ShareFile; before the close of business [Plaintiff] went to the Procurement Office with the entire bid by hand-delivery.").  Defendant "refused to accept and refuse[d] to consider [Plaintiff's] bid, claiming that an error in the . . . electronic submission platform rendered [Plaintiff's] bid untimely."  *Id.* ¶ 170.  Defendant also "refused to accept [Plaintiff's] multiple courtesy/backup copies" of its bid.  *Id.* ¶ 178.  In October of 2023, the City Commission voted to award the lease to Boucher.  *Id.* ¶ 206.

Plaintiff pleads 16 counts in the Fourth Amended Complaint.  Counts I through VI are for legal violations stemming from the April 28 Resolution.  *Id.* at 45–57.  Counts VII through IX are for legal violations related to deficiencies in the RFP.  *Id.* at 57–61.  Counts X through XIII are for legal violations for Defendant's refusal to accept and consider Plaintiff's bid.  *Id.* at 61–67.  Finally, Counts XIV through XVI are for legal violations for Defendant's award of the lease to Boucher.  *Id.* at 67–73.  Defendant now moves to dismiss the Fourth Amended Complaint for lack of standing, to dismiss Counts I through VI for mootness, and to dismiss each count for failure to state a claim upon which relief can be granted.

## II.   Analysis

### A. Standing

A court must dismiss a pleading if the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), (h)(3).  Under Article III of the United States Constitution, a federal court has subject

3

matter jurisdiction over a lawsuit only if the lawsuit presents a case or controversy. *Henry v. Att'y Gen., Ala.*, 45 F.4th 1272, 1287 (11th Cir. 2022) (citing U.S. Const. art. III, § 2). A plaintiff must have standing to satisfy Article III's case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires that (1) the plaintiff suffered an injury in fact; (2) there is a causal connection between the injury and the challenged conduct in that the injury is fairly traceable to the conduct and not the result of the independent action of a third party; and (3) it is likely and not merely speculative that a favorable decision by the court will redress the injury. *Id.* at 560–61. When a case is removed from state court, either the plaintiff must have Article III standing or the federal court must remand the case back to state court. *Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 994 (11th Cir. 2022).

A defendant may attack a plaintiff's standing facially or factually. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A facial attack requires the court to determine whether the plaintiff sufficiently alleged standing in the complaint, whereas a factual attack requires consideration of material extrinsic from the complaint such as affidavits and testimony. *Id.* at 1232–33. Defendant attacks Plaintiff's standing factually by relying on evidence outside of the Fourth Amended Complaint. *See* DE 28 at 8.

When a defendant factually attacks a plaintiff's standing, the court "is free to weigh the evidence," "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quotation omitted). But the court should not resolve a factual dispute that implicates the merits of the plaintiff's claim. *Id.* If a factual dispute implicates the merits of the plaintiff's claim, the proper course of action is for the court to find that jurisdiction exists and to deal with the merits of the

case.  *Id.*  The court should apply the summary judgment standard under Federal Rule of Civil Procedure 56, and that standard does not permit the court to weigh conflicting evidence or make credibility determinations.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990); *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016).

Defendant factually attacks Plaintiff's standing to bring all of the claims pled in the Fourth Amended Complaint.  Defendant argues that Plaintiff lacks standing to challenge the process that led to the award to Boucher because Plaintiff did not submit a timely bid.  DE 28 at 7–8 ("The City is first raising a factual challenge to the Court's subject matter jurisdiction over any and all of Penrod's claims . . . due to Penrod's failure to submit a timely bid pursuant to the RFP.").  To support that argument, Defendant cites Florida caselaw for a proposition that a non-bidder lacks standing to challenge an award of a public contract.  *Id.* at 10; DE 37 at 1–2; *e.g., Brasfield & Gorrie Gen. Contractor, Inc. v. Ajax Constr. Co., of Tallahassee*, 627 So. 2d 1200, 1203 (Fla. 1st Dist. Ct. App. 1993) ("However, a non-bidder, who is not and cannot potentially be a party to the contract with the public body, is not entitled to the relief of either an award of the contract, or a re-bid. . . . Based on the foregoing, we find that Ajax did not have standing to seek the injunction awarded herein."); *Fort Howard Co. v. Dep't of Mgmt. Servs. of State of Fla.*, 624 So. 2d 783, 785 (Fla. 1st Dist. Ct. App. 1993); *Westinghouse Elec. Corp. v. Jacksonville Transp. Auth.*, 491 So. 2d 1238, 1241 (Fla. 1st Dist. Ct. App. 1986).

The caselaw on which Defendant relies is distinguishable from the circumstances presented here because, in each of those cases, the challenging party did not bid.  *See Brasfield*, 627 So. 2d at 1202; *Fort Howard.*, 624 So. 2d at 784; *Westinghouse*, 491 So. 2d at 1241.  Here, the allegations before the Court are that Plaintiff did bid or at least attempted to bid.  *E.g.,* DE 25 ¶ 163 ("Penrod submitted its bid in response to the RFP"); *id.* ¶ 174 ("Penrod submitted its bid as instructed using

5

the Periscope platform"); *id.* ¶ 176 ("Penrod had provided the City backup/courtesy copies of its entire bid package on a secure electronic platform via Share File; before the close of business, Penrod went to the Procurement Office with the entire bid by hand-delivery"). Defendant contends that Plaintiff's bid did not comply with the RFP's requirements for submitting a bid because Plaintiff's bid was not received and time-stamped on the Periscope platform by the deadline of 3:00 p.m. on August 31, 2023. DE 28 at 9. Defendant has cited no case addressing the standing of a party who does bid or attempts to bid but does not follow the precise bidding requirements.

Even if Defendant is correct that a party lacks standing in such an instance, that conclusion would not support dismissing *all* of Plaintiff's claims for lack of standing. For example, Counts I through VI of the Fourth Amended Complaint are based on the April 28 Resolution and a no-bid process. Defendant has not explained why Plaintiff's lack of a timely bid would deprive it of standing to challenge a no-bid process. As another example, Plaintiff premises other counts in part on Defendant's refusal to grant a 24-hour extension of time to submit a bid due to a hurricane. *E.g.,* DE 25 ¶¶ 172–73, 184, 290, 294, 301. Defendant has not explained why Plaintiff's lack of a timely bid would deprive it of standing to challenge Defendant's denial of an extension of the time to bid.

Further, even if Defendant is correct that Plaintiff lacks standing if it did not submit a timely bid, the parties have presented a factual dispute and competing evidence concerning whether Plaintiff submitted a timely bid. For its part, Defendant relies on (1) a declaration of Mark Eigenbauer, Periscope's President, stating in part that Plaintiff's counsel did not complete the submission of Plaintiff's bid by 3:00 p.m. on August 31, 2023; and (2) a "Periscope Source Bidder Response Activity" report showing Plaintiff's counsel's activity on the Periscope platform that ends with a line indicating that counsel was on the "Review Offers" page (rather than on the

6

"Successful Confirm" page) at 2:59:44 p.m. on August 31, 2023.  DE 28 at 8; DE 28-4 at 3, 5–8.  For its part, Plaintiff relies on an affidavit of Christopher Clark, one of its attorneys, stating in part that, "Prior to 3:00 PM, the submission deadline, I had uploaded all required documents for submission, accepted all addenda, and submitted the bid."  DE 31 at 9; DE 31-4 at 9–10.

Defendant asserts that this factual dispute—whether Plaintiff submitted its bid by 3:00 p.m. on August 31, 2023—does not go to the merits or elements of any of Plaintiff's claims so as to preclude the Court from resolving the dispute at this stage of the litigation and finding that Plaintiff lacks standing.  DE 37 at 2; *see Morrison*, 323 F.3d at 925 (explaining that, if a factual dispute implicates the merits of the plaintiff's claim, the proper course of action is for the court to find that jurisdiction exists and to deal with the merits of the case).  But several of Plaintiff's claims are based on a premise that Defendant violated provisions of its Charter and Code by failing to accept Plaintiff's timely bid.  *E.g.,* DE 25 ¶¶ 163, 170, 177–78, 289–90, 293–94, 300–01.  Whether Plaintiff submitted a timely bid implicates the merits and goes to an element of those claims.

Defendant next asserts that, even if whether Plaintiff submitted a timely bid implicates the merits of Plaintiff's claims, the "Periscope Source Bidder Response Activity" report showing Periscope's metadata is "unimpeachable" and "unrebutted."  DE 37 at 4.  Defendant suggests that the statement in Plaintiff's counsel's affidavit that he submitted the bid prior to 3:00 p.m. is unsubstantiated, lacks credibility, and was made solely for the purpose of obtaining court jurisdiction.  *Id.* at 3–4; *see Lawrence*, 919 F.2d at 1530 n.7 ("Our holding in this case does not mean that a district court can never dismiss a federal claim for lack of subject matter jurisdiction whenever a decision on subject matter jurisdiction also implicates the substantive merits of the claim.  Where the plaintiff's claims are clearly immaterial, made solely for the purpose of obtaining

7

jurisdiction or are wholly unsubstantiated and frivolous, the court should dismiss the claim." (citation and quotation marks omitted)).

Plaintiff is entitled to conduct discovery into matters such as the completeness of Periscope's report and whether some error occurred that prevented Periscope from receiving and time-stamping the bid Plaintiff purportedly submitted by 3:00 p.m. This discovery could substantiate Plaintiff's counsel's affidavit. Discovery is ongoing in this case, as the most recent Trial Order set an October 17, 2024 discovery deadline. DE 36 at 2. The Court recommends that, at this stage of the litigation, Plaintiff's claims not be dismissed for lack of standing. The Court recommends that the Motion to Dismiss be denied insofar as it requests that Plaintiff's claims be dismissed for lack of standing.

### B. Shotgun Pleading

Neither party raised the subject of shotgun pleading in the briefing. However, a court has an obligation to *sua sponte* order that a shotgun pleading be corrected. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006) ("We also remind district courts of their supervisory obligation to *sua sponte* order repleading pursuant to Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates.").

A shotgun pleading violates the requirement that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018); *see* Fed. R. Civ. P. 8(a)(2) (requiring a pleading to contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief"). A shotgun pleading fails to some degree to give the defendants adequate notice of the claims against them and the grounds on which each claim rests. *Vibe Micro*, 878 F.3d at 1295. Shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of

discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (alterations and quotation marks omitted); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

There are four basic categories of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). First and most commonly, a pleading is shotgun if it contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* Second, a pleading is shotgun if it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third, a pleading is shotgun if it does not separate each cause of action or claim for relief into a different count. *Id.* at 1323. Fourth and finally, a pleading is shotgun if it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The Fourth Amended Complaint falls under the first category of shotgun pleadings in that each count in the Fourth Amended Complaint incorporates not only nearly 200 paragraphs of "general allegations," but also every paragraph of every proceeding count. *See, e.g.*, DE 25 ¶¶ 302, 312, 321. The final count—Count XVI—incorporates the entire Fourth Amended Complaint. *Id.* ¶ 331.

One difficulty with the shotgun pleading in this case is demonstrated by the following example: Count X alleges that Defendant violated its Charter, its Code, "and Florida law" by "refusing to grant Plaintiff's 24-hour extension, refusing to accept and consider Plaintiff's bid as timely, and refusing in its discretion to accept and consider Plaintiff's bid." *Id.* ¶¶ 289–90. Count X itself does not provide the "Florida law" on which the count purportedly is based. *See id.* ¶¶ 288–91. Because Count X incorporates everything that precedes it in the Fourth Amended Complaint, the Court could infer that Count X incorporates every Florida law that is referenced in the Fourth Amended Complaint before Count X. That previously referenced, possibly incorporated Florida law includes Article I, Section 9 of the Florida Constitution. *See id.* ¶¶ 233, 265. But if Count X is based in part on Article I, Section 9 of the Florida Constitution, then Count XIII—also based on Article I, Section 9 of the Florida Constitution and also a claim for Defendant's refusal to accept and consider Plaintiff's bid—is duplicative. *See id.* ¶¶ 303, 309.

In a case such as this where Plaintiff bases different claims on different laws and on different city actions occurring at different times, Plaintiff must be cognizant of what allegations it incorporates into each count. The Court recommends that the Fourth Amended Complaint be dismissed without prejudice for Plaintiff to replead its claims, incorporating only those allegations in each count that are needed to support the count. The Court recommends that the Motion to Dismiss be denied without prejudice insofar as it challenges individual counts. Defendant moves to dismiss Counts I through VI as moot, but those arguably moot claims are also incorporated into the remaining counts. Defendant moves to dismiss each count for failure to state a claim upon which relief can be granted, but each arguably insufficient count is also incorporated into each subsequent count.

### III.     Conclusion

For the foregoing reasons, the Court recommends that Defendant's Motion to Dismiss Fourth Amended Complaint [DE 28] be **DENIED**.  The Court recommends that Plaintiff's Fourth Amended Complaint [DE 25] be **DISMISSED WITHOUT PREJUDICE** to repleading.  Because the Court concludes that a hearing is unnecessary to enable the Court to make these recommendations, Defendant's Unopposed Motion for Hearing [DE 42] is **DENIED**.  The parties may move for Judge Leibowitz to hold a hearing on this Report and Recommendation and any objections thereto.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 26th day of June, 2024.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE