UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-CV-23362-LEIBOWITZ/AUGUSTIN-BIRCH

PENROD BROTHERS, INC.,

    Plaintiff,

v.

THE CITY OF MIAMI BEACH, FLORIDA,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO OVERRULE PRIVILEGE
OBJECTIONS AND REDACTIONS AND FOR *IN CAMERA* REVIEW
OF RESPONSIVE EMAILS TO SUBPOENA TO CHRISTOPHER CLARK, ESQ.**

This matter comes before the Court on Defendant The City of Miami Beach, Florida's Motion to Overrule Privilege Objections and Redactions and for *In Camera* Review of Responsive Emails to Subpoena to Christopher Clark, Esq. DE 85. Plaintiff Penrod Brothers, Inc. responded to the Motion, and Defendant replied. DE 87; DE 88. The Court held a hearing on the Motion on November 26, 2024. The Court has carefully considered the parties' briefing, the arguments that counsel made during the hearing, and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion [DE 85] is **GRANTED IN PART AND DENIED IN PART**.

**I.    Background**

In the Fifth Amended Complaint, Plaintiff alleges that, for more than three decades, it has operated "a world-renowned high-end beach club" called Nikki Beach at One Ocean Drive, Miami Beach, public property that Defendant leased to Plaintiff (the "One Ocean Drive property").

DE 69 ¶¶ 3, 32–36.  Plaintiff's lease of the One Ocean Drive property will expire on May 6, 2026.  *Id.* ¶ 37.  Plaintiff contends that, in the summer or fall of 2022, Defendant began to take actions to ensure that a different entity, Boucher Brothers Miami Beach, LLC ("Boucher"), will become the next operator of the One Ocean Drive property when Plaintiff's lease expires.  *Id.* ¶¶ 55–66.

Plaintiff alleges that, during Defendant's April 28, 2023 City Commission meeting, the City Commission passed Resolution No. 2023-32586 (the "April 28 Resolution").  *Id.* ¶ 75.  The April 28 Resolution would have allowed Defendant to avoid the formal, public, and competitive bidding process required for leases of public property under Defendant's Charter and Code and to award operation of the One Ocean Drive property to Boucher.  *Id.* ¶¶ 74, 76, 78, 82.

Plaintiff next alleges that, during Defendant's May 17, 2023 City Commission meeting, the City Commission rescinded the April 28 Resolution and passed Resolution No. 2023-32612 (the "May 17 Resolution") in its place.  *Id.* ¶ 81.  The May 17 Resolution directed Defendant to request bids for the operation of the One Ocean Drive property.  *Id.* ¶¶ 81, 88–89.  Defendant did so in June 2023 by issuing Request for Proposals No. 2023-479-KB (the "RFP").  *Id.* ¶ 90.  The RFP had an expedited response deadline that eventually was extended to August 31, 2023, at 3:00 p.m.  *Id.* ¶¶ 92, 159, 174.  Bids were to be submitted via an online platform operated by an entity called Periscope.  *Id.* ¶ 174.

Plaintiff contends that it submitted a bid that was "timely and in compliance with all relevant instructions."  *Id.* ¶ 163.  Plaintiff "submitted its bid as instructed using the Periscope platform prior to the August 31, 2023, 3:00 p.m. deadline."  *Id.* ¶ 174; *see also id.* ¶ 175 ("[Plaintiff's] entire proposal was received electronically by [Defendant] through Periscope on or before the submittal deadline."); *id.* ¶ 178 ("[Defendant] had full access to [Plaintiff's] entire bid package, time-stamped, on Periscope, before the 3:00 p.m. deadline.").  To submit the bid, Plaintiff

2

"selected the final 'confirmation' button on the Periscope platform, and its bid on Periscope was 'confirmed.'" *Id.* ¶ 176.  However, "Periscope did not generate a confirmation." *Id.* "Suspecting error, [Plaintiff] immediately and urgently contacted [Defendant], and then made numerous submissions of copies of its bid by other means (including email, ShareFile, and hand-delivery)." *Id.*; *see also id.* ¶ 177 ("Within minutes of the deadline, [Plaintiff] had provided [Defendant] backup/courtesy copies of its entire bid package on a secure electronic platform via ShareFile; before the close of business [Plaintiff] went to the Procurement Office with the entire bid by hand-delivery."). Defendant "refused to accept and refuse[d] to consider [Plaintiff's] bid, claiming that an error in the . . . electronic submission platform rendered [Plaintiff's] bid untimely." *Id.* ¶ 170. Defendant also "refused to accept [Plaintiff's] multiple courtesy/backup copies" of its bid. *Id.* ¶ 179. In October of 2023, the City Commission voted to award the lease to Boucher. *Id.* ¶ 207.

Plaintiff pleads 16 counts in the Fifth Amended Complaint.  Counts I through VI are for legal violations stemming from the April 28 Resolution. *Id.* at 49–61.  Counts VII through IX are for legal violations related to purported deficiencies in the RFP. *Id.* at 61–65.  Counts X through XIII are for legal violations for Defendant's refusal to accept and consider Plaintiff's bid. *Id.* at 65–71. Counts XIV through XVI are for legal violations for Defendant's award of the lease to Boucher. *Id.* at 71–77.

## II.   The Motion to Overrule Privilege Objections

Defendant served a non-party subpoena to produce documents on Attorney Christopher Clark, the attorney responsible for submitting Plaintiff's bid on Periscope.  Attorney Clark responded with several objections. *See* DE 85-1.  At issue in the instant Motion are Attorney Clark's objections on the bases of attorney-client privilege and work product protection to

3

producing unredacted versions of 21 emails. Attorney Clark has produced redacted versions of the emails that show the senders, recipients, dates and times sent, and subject lines, but most of the substance of the emails is redacted. DE 85-2. The emails were sent at various times on August 31, 2023—the date of the bid submission deadline.

Defendant argues in the Motion that Plaintiff must log the 21 emails on a privilege log. The parties disagree about whether the emails must be logged because the emails were sent after Plaintiff filed this case in state court, and the Local Rules exempt from the logging requirement "written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action." Southern District of Florida Local Rule 26.1(e)(2)(C) ("This rule requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection except the following: written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action."). Despite the parties' disagreement, Plaintiff logged the 21 emails after Defendant filed the Motion. *See* DE 87-3. Accordingly, to the extent that Defendant moves for Plaintiff to create a privilege log, the Motion is **DENIED AS MOOT**.

In the Motion, Defendant asks the Court to conduct an *in camera* review of unredacted versions of the 21 emails. Following the November 26 hearing, the Court ordered Plaintiff to file under seal unredacted versions of the emails for an *in camera* review, and Plaintiff complied. DE 90; DE 91. The Court has conducted its *in camera* review. Thus, to the extent that Defendant moves for an *in camera* review, the Motion is **GRANTED**.

4

The Court now turns to Attorney Clark's objections. Defendant maintains that Plaintiff has waived attorney-client privilege and work product protection over the 21 emails by issue injection.[1] The doctrine of waiver by issue injection

> forbids one party from placing blame or intent on another, i.e., brandishing a sword, while at the same time allowing that party to hide behind the shield of attorney client or work product protection in justification of not having to divulge the very information that may prove harmful to its position.

*Banta Props. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 WL 13096151, at *3 (S.D. Fla. Sept. 15, 2011). Issue injection "applies only when the disclosing party attempts to prove a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *3 (S.D. Fla. July 11, 2011) (quotation marks omitted) (explaining that courts have found waiver where a client testifies concerning portions of an attorney-client communication, places the attorney-client relationship directly at issue such as in a malpractice lawsuit, or relies on attorney advice as an element of a claim or defense).

Caselaw reinforces a proposition that waiver by issue injection applies in the narrow circumstance where a party puts an attorney-client communication, the attorney-client relationship, or attorney advice at issue. For example, in one case in which it addressed waiver by issue injection, the Eleventh Circuit concluded that an appellee waived attorney-client privilege by raising a defense that it believed its employee leave policy was lawful, injecting into the

---

[1] During the November 26 hearing, in addition to arguing waiver, Defendant argued that the emails may not be privileged or protected at all because they may contain business advice rather than legal advice. But Defendant did not make that second argument in the Motion. While Defendant did state in the Motion that Attorney Clark's role was that of a business representative rather than litigation counsel, Defendant made that statement in the context of asserting that the emails should be logged. DE 85 at 4. To the extent that Defendant contends Plaintiff should produce unredacted versions of the emails because they are not privileged or protected at all, Defendant waived that argument by failing to raise it in the Motion and cite authority in support thereof. *See, e.g.*, *Ennix v. Abbott Lab'ys*, No. 24-cv-61702, 2024 WL 4717084, at *2 n.1 (S.D. Fla. Oct. 10, 2024) (ruling that a plaintiff waived an argument by failing to meaningfully raise it in an initial brief).

5

litigation attorney advice the appellee had received concerning the policy's lawfulness. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418–20 (11th Cir. 1994). In a second case addressing waiver by issue injection, the Eleventh Circuit ruled that an appellant would waive attorney-client privilege by injecting into the litigation an issue involving the reasonableness of attorney conduct during settlement negotiations. *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987); *see also Jahn v. Gov't Emps. Ins. Co.*, 759 F. App'x 815, 817–18 (11th Cir. 2018) (affirming a district court's ruling that an insured's trustee waived attorney-client privilege by injecting a claim that an attorney failed to properly communicate with the insured); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967) (concluding that an appellant waived attorney-client privilege by contending that his defense attorney failed to adequately represent him during his criminal proceeding); *Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 643 (S.D. Fla. 2007) ("In this case, to allow Mr. Baratta to testify that he never gave Mr. Martin settlement authority, while at the same time disallowing Defendant to inquire into the subject matter of his and his litigation attorney's exchanges regarding settlement, would result in a sword/shield situation whereby Mr. Baratta would be permitted to give his one-sided version of the story, while shielding himself from potentially harmful testimony of another.").

Defendant argues in the Motion that Plaintiff has injected into this litigation (1) whether Attorney Clark timely submitted Plaintiff's bid on the Periscope platform; and (2) whether a hurricane hindered Attorney Clark if the bid was not timely submitted.[2] Even if Defendant's argument is correct, Plaintiff has not put at issue the substance of attorney communications or advice or the attorney-client relationship. Stated another way, Plaintiff is not using attorney

---

[2] In its Reply and during the November 26 hearing, Defendant argued that, in addition, Plaintiff has injected an issue concerning its knowledge about the submission requirements. Defendant waived this argument by failing to raise it in the Motion. *See Ennix*, 2024 WL 4717084, at *2 n.1.

6

communications or advice or the nature of the attorney-client relationship as a sword to prove its case while hiding behind the shield of attorney-client privilege. Accordingly, the Court concludes that Plaintiff has not waived by issue injection its attorney-client privilege as to the 21 emails.

Furthermore, as already stated, the Court conducted an *in camera* review of unredacted versions of the emails. Even if waiver by issue injection is not as narrow as the Court has concluded it is (that is, that it applies only where a party puts an attorney-client communication, the attorney-client relationship, or attorney advice at issue), the Court can confirm that Plaintiff is correct in its assertion that the substance of the emails does not inform on the issues of whether Attorney Clark timely submitted Plaintiff's bid on the Periscope platform or whether a hurricane hindered Attorney Clark in submitting the bid. Defendant's request that the Court overrule Attorney Clark's objections and order Plaintiff to produce unredacted versions of the 21 emails is **DENIED**.

### III.   Conclusion

For the foregoing reasons, Defendant's Motion to Overrule Privilege Objections and Redactions and for *In Camera* Review of Responsive Emails to Subpoena to Christopher Clark, Esq [DE 85] is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted insofar as the Court conducted the *in camera* review that Defendant requests. The Motion is denied in all other respects. Docket entry 91 shall remain sealed until otherwise ordered.

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 6th day of December, 2024.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE