**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:23-cv-23362-LEIBOWITZ/AUGUSTIN-BIRCH**

PENROD BROTHERS INC.,

     *Plaintiff*,

v.

CITY OF MIAMI BEACH,

     *Defendant.*

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**<u>TO BOUCHER'S MOTION TO INTERVENE</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RELEVANT BACKGROUND ......................................................................................... 2

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      Boucher's Motion is Extraordinarily Untimely, Precluding Intervention. ........................ 5

II.     Boucher Meets None of the Required Elements for Mandatory
Intervention. ................................................................................................................ 9

       A.      The City Adequately Protects Boucher's "Interests."................................9

       B.      Boucher Has No Substantive Interest at Risk of Impairment. ...............................13

III.    Boucher Does Not Meet the Required Elements for Permissive
Intervention. ............................................................................................................. 14

       A.      Intervention Will Substantially Prejudice Penrod................................14

       B.      Boucher's Intervention Will Implicate Facts and Issues Outside
this Case. .........................................................................................................17

IV.    Alternatively, the Court Must Impose Strict Restrictions on Intervention. ..................... 17

V.     Boucher Failed to Confer.............................................................................................. 19

CONCLUSION................................................................................................................ 19

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.R. v. Dudek*,
2014 WL 12519764 (S.D. Fla. Apr. 7, 2014) ........................................................................13

*Alexandra H. v. Oxford Health Ins., Inc.*,
2012 WL 13194938 (S.D. Fla. Feb. 10, 2012) ........................................................................5

*Am. Nat. Bank & Trust Co. of Chicago v. City of Chicago*,
865 F.2d 144 (7th Cir. 1989) ........................................................................9

*Anderson Columbia Env't, Inc. v. U.S.*,
42 Fed. Cl. 880 (1999) ........................................................................14

*Assoc. Indus. of Alabama, Inc. v. Train*,
543 F.2d 1159 (5th Cir. 1976) ........................................................................11

*Athens Lumber Co. v. F.E.C.*,
690 F.2d 1364 (11th Cir. 1982) ........................................................................11

*Bake House SB, LLC. v. City of Miami Beach*,
2017 WL 2645760 (S.D. Fla. June 20, 2017) ........................................................................9

*Basulto v. Netflix, Inc.*,
2023 WL 4186404 (S.D. Fla. June 24, 2023) ........................................................................5

*Beauregard, Inc. v. Sword Servs. L.L.C.*,
107 F.3d 351 (5th Cir. 1997) ........................................................................17

*Burke v. Ocwen Fin. Corp.*,
833 F. App'x 288 (11th Cir. 2020) ........................................................................5, 7, 14

*Campbell v. Hall-Mark Elecs. Corp.*,
808 F.2d 775 (11th Cir. 1987) ........................................................................7, 8

*Catano v. Capuano*,
2020 WL 708268 (S.D. Fla. Feb. 12, 2020) ........................................................................7

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ........................................................................5, 14

*Commodores Ent. Corp. v. McClary*,
822 F. App'x 904 (11th Cir. 2020) ........................................................................8

*Eddy Leal, P.A. v. Bimini Dev. of Vill. W. Corp.*,
2018 WL 4776377 (S.D. Fla. Aug. 28, 2018) ........................................................................7

*F.T.C. v. MOBE Ltd.*,
2019 WL 7842055 (M.D. Fla. Oct. 23, 2019) ........................................................................7

*Gonzalez v. Arizona*,
485 F.3d 1041 (9th Cir. 2007) ........................................................................9

ii

*Hofmann v. EMI Resorts, Inc.*,
   689 F. Supp. 2d 1361 (S.D. Fla. 2010) ....................................................................7

*Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*,
   254 F. App'x 769 (11th Cir. 2007) ......................................................................5, 7

*Hugo v. Levan*,
   2009 WL 10668490 (S.D. Fla. Sept. 2, 2009) ........................................................7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   872 F.3d 57 (1st Cir. 2017)...................................................................................18

*In re W. Caribbean Airways Crew Members*,
   2010 WL 11601239 (S.D. Fla. Jan. 8, 2010) .........................................................8

*Jordan v. Filippone*,
   2021 WL 1601994 (S.D. Fla. Apr. 23, 2021) .......................................................19

*Kennedy v. Desantis*,
   2023 WL 11804228 (S.D. Fla. Mar. 29, 2023)......................................................15

*Kinnett Dairies, Inc. v. Farrow*,
   580 F.2d 1260 (5th Cir. 1978) ............................................................................14

*Latecoere Int'l, Inc. v. U.S. Dep't of Navy*,
   19 F.3d 1342 (11th Cir. 1994) ............................................................................14

*Little River Transp., LLC v. Oink Oink, LLC*,
   2023 WL 2931431 (S.D. Fla. Apr. 13, 2023) .......................................................14

*Lloyd Wood Const. Co. v. Sandoval*,
   318 F. Supp. 1167 (N.D. Ala. 1970) ...................................................................13

*ManaSota-88, Inc. v. Tidwell*,
   896 F.2d 1318 (11th Cir. 1990) ..........................................................................14

*Mark Dunning Indus., Inc. v. Cheney*,
   934 F.2d 266 (11th Cir. 1991) ............................................................................14

*McKnight Const. Co. v. Perry*,
   888 F. Supp. 1178 (S.D. Ga. 1994)......................................................................13

*Mitchco Int'l, Inc. v. U.S.*,
   149 Fed. Cl. 683 (2020) ......................................................................................17

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*,
   425 F.3d 1308 (11th Cir. 2005) ................................................................5, 13, 17

*NAACP v. New York*,
   413 U.S. 345 (1973).............................................................................................5

*Peng v. Mastroianni*,
   2023 WL 4763198 (S.D. Fla. June 26, 2023) ........................................................7

iii

*Procaps S.A. v. Patheon Inc.*,
   141 F. Supp. 3d 1246 (S.D. Fla. 2015),
   *aff'd*, 845 F.3d 1072 (11th Cir. 2016)................................................................................4

*Reeves v. Wilkes*,
   754 F.2d 965 (11th Cir. 1985) ..........................................................................................6

*Roberts v. Gordy*,
   2015 WL 11201183 (S.D. Fla. Apr. 14, 2015) .................................................................7

*Rubin v. Rubin*,
   2023 WL 8169371 (S.D. Fla. Oct. 18, 2023).....................................................................7

*S.E.C. v. Brooks*,
   2018 WL 11267120 (S.D. Fla. July 12, 2018)..................................................................6

*S.E.C. v. Creative Cap. Consortium, LLC*,
   2015 WL 4077451 (S.D. Fla. July 6, 2015)......................................................................8

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984)...........................................................................................................16

*Sierra Club, Inc. v. Leavitt*,
   488 F.3d 904 (11th Cir. 2007) .....................................................................................5, 13

*Singer v. WWF Operating Co.*,
   294 F.R.D. 673 (S.D. Fla. 2013).................................................................................5, 7

*Southern v. Plumb Tools, A Div. of O'Ames Corp.*,
   696 F.2d 1321 (11th Cir. 1983)......................................................................................17

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987)........................................................................................................18

*U.S. v. 60 Auto. Grilles*,
   799 F. App'x 693 (11th Cir. 2020) .................................................................................11

*U.S. v. Albert Inv. Co.*,
   585 F.3d 1386 (10th Cir. 2009) ......................................................................................18

*U.S. v. Anderson*,
   799 F.2d 1438 (11th Cir. 1986) ......................................................................................16

*U.S. v. Borge*,
   249 F.R.D. 387 (S.D. Fla. 2008)...................................................................................6, 7

*U.S. v. City of Miami*,
   278 F.3d 1174 (11th Cir. 2002) ...................................................................................9, 11

*U.S. v. Georgia*,
   19 F.3d 1388 (11th Cir. 1994) .....................................................................................9, 11

*U.S. v. Jefferson Cnty.*,
   720 F.2d 1511 (11th Cir. 1983) .................................................................................5, 6, 8

iv

*U.S. v. McDonald,*
   432 U.S. 385 (1977) ........................................................................................................5

*U.S. v. S. Fla. Water Mgmt. Dist.,*
   922 F.2d 704 (11th Cir. 1991) ......................................................................................18

*Wallace v. Norwegian Cruise Line Ltd.,*
   2011 WL 13112227 (S.D. Fla. May 9, 2011) ...............................................................15

*Williams Island Synagogue, Inc. v. City of Aventura,*
   222 F.R.D. 554 (S.D. Fla. 2004),
   *aff'd,* 138 F. App'x 299 (11th Cir. 2005) ....................................................................13

**Rules**

Fed. R. Civ. P. 19 .................................................................................................................4

Fed. R. Civ. P. 24 .................................................................................................................4

S.D. Fla. L. R. 7.1 ...............................................................................................................19

S.D. Fla. L.R. 26.1 ..............................................................................................................16

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Plaintiff Penrod Brothers, Inc. ("Penrod") opposes Boucher Brothers Pier Park, LLC's ("Boucher") Motion to Intervene, ECF No. [130] ("Motion"), in Plaintiff's suit against Defendant City of Miami Beach ("City"):

## INTRODUCTION

Intervention is prohibited unless the non-party meets its burden to prove that its request is timely, that it has a right not adequately represented by the existing litigants, and that intervention will not prejudice the parties and the case. Boucher abjectly fails to prove any of that.

Boucher asked to exit this case and then intentionally waited two years to intervene, a threshold and fatal failure under binding precedent. Boucher must prove that it acted rapidly after it knew it had an interest at stake. Yet, Boucher has known that Penrod's lawsuit seeks to invalidate the City's unlawful RFP and the ensuing City-Boucher contract (the result Boucher claims it needs to intervene to prevent), since Penrod sued the City *and Boucher* for that purpose in May 2023. Boucher was so well aware of the risks of this litigation that Boucher, itself, drafted a specific carve-out into that very October 2023 contract to avoid indemnifying the City, if and when Penrod succeeds in doing so in this case.

Scores of cases across the Eleventh Circuit are uniform: waiting 18-24 months bars intervention, period. Boucher must also prove no prejudice to Penrod from delayed intervention, but the case law is uniform that intervention after extensive discovery, as here, is by definition prejudicial. Boucher must also prove it will be prejudiced absent intervention, which binding precedent rejects because Boucher can later sue to protect any rights it may have. Boucher does not cite a single case allowing a party defendant to seek and gain dismissal and then, after sitting silent for 18 months, seek and gain intervention back into the same lawsuit. Indeed, Boucher completely ignores the massive body of Eleventh Circuit and in-District case law prohibiting untimely intervention, because that precedent demands that the Court deny the Motion on this independent basis and regardless of any other consideration.

Separately, to intervene, Boucher needs to prove that the City is not pursuing the "same ultimate objectives" as Boucher in this lawsuit, and to further prove a "direct conflict" between the City's and Boucher's interests. Far from meeting that burden, Boucher admits the exact opposite: Boucher admits that it and the City share the *identical* (not merely "the same") bottom-line goals of validating the RFP and ensuing contract; Boucher lists proposed affirmative defenses that are *identical to and completely overlapping* (not just "the same" as) the arguments and defenses already

1

asserted by the City here; and—most flagrant—the City and Boucher have all along been working together in this lawsuit under a *common interest privilege and joint defense arrangement*, definitively disproving a "direct conflict" between Boucher's and the City's interests.

Finally, Boucher's intervention—after two rounds of complex motion to dismiss briefing, after a year and half of voluminous and contentious discovery, after the exchange of all expert reports, with discovery closing in weeks and dispositive motions due a month later, with a firm trial setting later this year—will upend these proceedings and threaten the collapse of Penrod's business. Prejudice to Penrod in increased discovery or delayed proceedings alone bars (permissive) intervention.

Boucher's late and improper attempt to intervene appears intentionally designed to disrupt and delay the relief Penrod seeks—a Code- and Charter-compliant procurement process where Penrod (and everyone else) can compete fairly to partner with the City before Penrod's lease expires in May 2026—so that Boucher can capitalize on (while its competitor, Penrod, suffers from) the results of the City's unlawful, no-bid, inside-track RFP that favored Boucher. Whatever the reason for Boucher's improper tactics, Boucher's Motion fails under binding precedent. As this Court observed at its first status conference, Penrod and the City are the only parties needed to resolve this lawsuit. The Court should deny the Motion in full.

## RELEVANT BACKGROUND

Penrod's operative complaint asserts four buckets of claims corresponding to the stages of the City's violations of the competitive solicitation requirements in its Code and Charter:

(I)     "No Bid Claims" (Counts 1-6) involve the City's underlying policy to unlawfully no-bid the project, operations, and property to its preferred insider Boucher, culminating in the City's April 2023 City Commission Resolution to no-bid the project.

(II)    "Specifications Claims" (Counts 7-9) address the City's May-August 2023 request for proposals ("RFP") and attendant procurement process, which the City undertook once Plaintiff exposed the illegal no-bid attempt, but which still violated the mandatory requirements for a competitive solicitation process in the City's Charter and Code.

(III)   "Submission Claims" (Counts 10-13) address the City's unlawful refusal in August and September 2023 to consider Plaintiff's timely-submitted bid in response to the RFP.

(IV)    "Award Claims" (Counts 14-16) challenge the City's ultimate awards of the RFP and ensuing lease to Boucher in September and October 2023.

Boucher has known about this lawsuit and Penrod's objective—to invalidate the City's violations of procurement laws that resulted in the City's unlawful contract with Boucher, and force

2

the City to undertake a Code- and Charter-compliant procurement process—since this case began in May 2023. That is because Boucher was joined to this lawsuit when it was first filed, *but asked to exit the lawsuit, in which it now, two years later, seeks to intervene*. *See* ECF Nos. [1-1]-[1-4].

Penrod initially sued the City and Boucher in state court, asserting different claims than those before this Court and when much of the City's malfeasance had not yet taken place. But even then, Penrod made clear that its ultimate goal was to prevent and void the City's unlawful process and any ensuing contract for the future of the One Ocean Drive Property. *See* ECF No. [1-1] at 17, 23, 25, 36, 39, 41, 46, 50.[1] Boucher sought and was granted dismissal in August 2023. Penrod's amended pleading dropped Boucher as a party defendant and focused on the City's procurement law violations. Boucher was served with Penrod's amended pleading, and with the City's removal papers, in August and September 2023. At that time, Boucher first took the position that it had interests at stake that could not be resolved without "a signed release executed by Boucher and Penrod, whereby Penrod would release Boucher from any and all claims or potential claims arising from the matters alleged in, and related to, the previously dismissed complaint," but then changed course, and "acknowledge[d] that we are *no longer a party in this case* and *do not intend to participate* in further hearings on this matter." Ex. A (8/16/23 email from counsel to Boucher); Ex. B (8/29/23 email from counsel to Boucher).[2]

Penrod's amended pleadings again made its central goal crystal clear: "The City's current procurement process for the multi-million dollar One Ocean Drive property is fatally defective; it and anything resulting from it must be voided." ECF Nos. [13-1] ¶ 15, [25] ¶ 15. That, expressly but also obviously, included both the RFP and contract awarded to Boucher. Those amended pleadings followed and tracked Penrod's well-publicized bid protests, which challenged the RFP and contract with Boucher, in July, August, September, and October 2023. *See* Ex. C (excerpts from City rough privilege log; Boucher and City discussing Penrod's bid protests).[3] Thereafter, in Boucher's October 2023 contract with the City for the Property, Boucher specifically carved-out this lawsuit (or related

---

[1] *E.g.*, seeking to enjoin the RFP as a "flawed process" and to bar "any deal with Boucher in connection with the use, lease or management of the Property" resulting from that flawed process.

[2] Here and throughout, all emphasis added and quotations omitted unless otherwise noted.

[3] The City provided Penrod a "rough" privilege log with 398,984 individual entries. Exhibit C is a very small sample of that massive log highlighting instances of the City claiming privilege over communications between the City and Boucher about the underlying facts and about this litigation.

claims by Penrod) from its agreement to indemnify the City from lawsuits "challenging the validity, execution or effectiveness" of that contract. ECF No. [72-6] § 17.1. So Boucher knew, very well and for a very long time, that Penrod was suing the City in this lawsuit to invalidate the RFP and the resulting lease.

Nearly two years went by. This Court took charge of the case and established pre-trial deadlines and a trial setting. ECF No. [68]. Because the City raised Boucher's possible entry under Rule 19, the Court examined intervention at its initial case management conference, ECF No. [66], and emphasized that Boucher would need to join "***well before the end of the discovery deadline***," but recognized, in any event, that Boucher "doesn't need to be in the case." Ex. D (transcript of case management conference) at 17:20-20:18 (cleaned up). The two proper parties to the current lawsuit, Penrod and the City: engaged in two rounds of complex motion to dismiss briefing; undertook a year and half of voluminous and contentious discovery exchanges, disputes, and court proceedings; exchanged initial and rebuttal expert disclosures and reports; are almost finished taking depositions; and will complete discovery (on deadlines the Court already extended, due to discovery delays by the City, ECF No. [128]) in less than six weeks. Not a peep from Boucher.

All along, *Boucher and the City have acted under a joint-defense or common interest agreement*, aligned against Penrod and specifically for this lawsuit. The City logged, as attorney-client privileged, communications it had with Boucher, including calls and emails about Penrod's bid protests and claims. *See* Ex. C. Even *after* it filed its Motion feigning different interests in this case, Boucher and the City continue to assert the privilege over their communications—including "attorney communications concerning strategy and coordination with counsel for Boucher, which remain protected under the attorney work product doctrine." Ex. E (4/16/23 email from counsel to City); Ex. F (excerpt of deposition transcript) at 35:12-23 (counsel to Boucher asserting common interest/joint privilege).

## LEGAL STANDARD

Boucher misconstrues and misstates the applicable standard for mandatory and permissive intervention under Rule 24 in this Circuit. As just some examples, Boucher throughout its Motion misidentifies and misquotes out-of-Circuit case law as binding Eleventh Circuit law (*e.g.*, Mot. at 8-9), and (therefore) misrepresents the law on, *inter alia,* timeliness (Mot. at 7) and legal interest (Mot. at 8). Whether those errors were inadvertent or intentional, Boucher cannot use its reply to present for the first time arguments and authority it should have included in its initial Motion. *See Procaps*

4

*S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1294 (S.D. Fla. 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016) (declining to consider legal authority and arguments cited for the first time in reply briefing); *Alexandra H. v. Oxford Health Ins., Inc.*, 2012 WL 13194938, at *1 (S.D. Fla. Feb. 10, 2012) (disapproving party raising critical case law first on reply); *Basulto v. Netflix, Inc.*, 2023 WL 4186404, at *5 (S.D. Fla. June 24, 2023) ("[C]ourts do not consider legal arguments raised for the first time in a reply memorandum.").

Boucher, as the moving party, bears the burden to prove *every element* necessary to justify intervention, whether mandatory or permissive. *See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007); *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 291 (11th Cir. 2020); *Singer v. WWF Operating Co.*, 294 F.R.D. 673, 675 (S.D. Fla. 2013).

Preliminarily, whether for mandatory or permissive intervention, Boucher must prove (1) that its request is timely. *See U.S. v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983) (citing *U.S. v. McDonald*, 432 U.S. 385, 387 (1977)); *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("If it is untimely, intervention must be denied."). Boucher's failure to do so is dispositive. For intervention as of right, Boucher would then also need to "show [2] that it has an interest in the subject matter of the suit, [3] that its ability to protect that interest may be impaired by the disposition of the suit, and [4] that existing parties in the suit cannot adequately protect that interest." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). For permissive intervention, in addition to timeliness Boucher would need (2) to demonstrate that it has a claim or defense with a "question of law or fact in common" with this suit, and (3) to prove that "the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties" to this lawsuit. *Id.* at 1312. The Court "has discretion to deny intervention even if both of those requirements are met." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

## ARGUMENT

### I.   Boucher's Motion is Extraordinarily Untimely, Precluding Intervention.

Boucher has known since May 2023 (or, at the latest, October 2023) what interests and outcomes are at stake in this litigation—but waited 18-24 months to seek intervention. That outrageous delay, regardless of any other issue, is fatal to the Motion.

"[T]he timeliness of a motion to intervene is a threshold factor that must be satisfied before the other factors should be considered." *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 254 F. App'x 769, 771 (11th Cir. 2007). Courts in this Circuit consider four factors to determine

timeliness: "(1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *U.S. v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983); *Reeves v. Wilkes*, 754 F.2d 965, 969 (11th Cir. 1985).

Tellingly, Boucher *entirely ignores* the fundamental timeliness factor—that it waited nearly two years to intervene despite knowing it (allegedly) had an interest in the case. Courts measure a would-be intervenor's timeliness from when it "*reasonably should have* known of [its] interest in the case," *not* from when it "*actually* knew of and understood [its] legal rights," nor from when it "becomes dissatisfied with the direction a case is taking." *See U.S. v. Borge*, 249 F.R.D. 387, 389 (S.D. Fla. 2008); *S.E.C. v. Brooks*, 2018 WL 11267120, at *3 (S.D. Fla. July 12, 2018). Boucher tries to justify intervention by claiming an "interest in the competitive procurement process [the RFP] and contract award" and a "financial and contractual interests as the selected awardee and recipient of an executed concession agreement" with the City. Mot. at 1, 3, 8-9. So here, the question is when Boucher should reasonably have understood that this lawsuit challenged the RFP and any ensuing contract award.

Boucher knew since Penrod filed suit in May 2023 that Penrod's goal is to ensure a Code- and Charter-compliant procurement process, rather than the unlawful process the City ran to give the Property to Boucher—because Boucher was in the lawsuit then. Boucher knew that Penrod's suit would challenge the RFP's improper rules and procedures along with anything flowing from them, when Penrod detailed those defects and those goals in its July and August 2023 bid protests—which the City shared and discussed with Boucher. Boucher knew that Penrod had actually sued to undo the defective RFP and the improper contract award to Boucher, when Penrod supplemented its pleading to add those claims, as those City procurement law violations matured, in September and October 2023. Boucher so well knew that this lawsuit aimed to reverse the RFP and void the awarded contract, that Boucher drafted an express carve-out into its October 2023 contract with the City so that *it would not need to indemnify the City when Penrod, by this specific lawsuit, successfully undid the RFP and voided that contract*. ECF No. [72-6] § 17.1. Yet, Boucher sat on any rights it had until April 2024. Boucher's Motion does not contest (or even address) these facts, dispositive of this

6

threshold prerequisite for intervention (and cannot do so for the first time on reply).

Eleventh Circuit and in-District case law is overwhelming and uniform: an 18 month to two year delay is extraordinarily untimely, precluding intervention. *See Campbell v. Hall-Mark Elecs. Corp.*, 808 F.2d 775, 776-77 (11th Cir. 1987) (15 month delay untimely); *Burke*, 833 F. App'x at 291 (21 month delay untimely); *Hollywood Synagogue*, 254 F. App'x at 771 (22 months delay untimely); *Eddy Leal, P.A. v. Bimini Dev. of Vill. W. Corp.*, 2018 WL 4776377, at \*4 (S.D. Fla. Aug. 28, 2018) (18 month delay untimely); *Peng v. Mastroianni*, 2023 WL 4763198, at \*4 (S.D. Fla. June 26, 2023) (17 month delay untimely); *Hugo v. Levan*, 2009 WL 10668490, at \*2 (S.D. Fla. Sept. 2, 2009) (9 month delay untimely) *Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1380 (S.D. Fla. 2010) (7 month delay untimely); *Catano v. Capuano*, 2020 WL 708268, at \*3 (S.D. Fla. Feb. 12, 2020) (6 month delay untimely); *Rubin v. Rubin*, 2023 WL 8169371, at \*6 (S.D. Fla. Oct. 18, 2023) (6 month delay untimely); *Roberts v. Gordy*, 2015 WL 11201183, at \*2 (S.D. Fla. Apr. 14, 2015) (5 months delay untimely); *Singer v. WWF Operating Co.*, 294 F.R.D. 673, 675 (S.D. Fla. 2013) (3 month delay untimely). Boucher does not cite a single case in its Motion to the contrary.

If the Motion was remotely timely (it is not), Boucher would still need to show no prejudice to Penrod from having waited two years to intervene (that Boucher's intervention, in and of itself, is intentionally prejudicial and disruptive is discussed below). Boucher claims it shouldered that burden by (1) misrepresenting to the Court that discovery closes three months after it filed its Motion (it filed the motion on April 8 and discovery ends just under *two* months later, on June 6) and (2) because the City suggested Boucher might intervene back in October 2023. Mot. at 8. To the contrary, that Boucher anticipated intervention but waited two years and until the end of discovery to do so *establishes* (rather than undermines) prejudice to Penrod. *See Burke*, 833 F. App'x at 292 n.2 (timing prejudicial because parties "already conducted extensive discovery"); *Roberts*, 2015 WL 11201183 at \*2 (timing prejudicial one year into lawsuit after "numerous depositions have been taken, mountains of discovery served," and parties "would need to prepare for and take discovery of [intervenor], with the deadline to complete discovery looming less than three months away"); *Borge*, 249 F.R.D. at 389 (timing prejudicial after 1 year of discovery and with discovery cutoff "fast approaching"); *F.T.C. v. MOBE Ltd.*, 2019 WL 7842055, at \*6 (M.D. Fla. Oct. 23, 2019) ("significant prejudice to the existing parties" where intervention "stands to prolong discovery, prolong the resolution of the underlying case, and increase [litigation] expenditures" that "could have [been] avoided [] by moving to intervene" earlier). If Boucher could justify intervention (it cannot),

it should have done so before Penrod engaged in a year and a half of "extensive discovery" with "mountains" of document production, "numerous depositions," complete expert disclosures, and with under two months to "prepare for and take discovery" from Boucher. *Ids*. Boucher cites no contrary (actually, any) authority.

Neither does or could Boucher establish its own prejudice if it does not intervene. "Prejudice" from non-intervention is only found where "a final judgment in the case may bind the movant even though he is not adequately represented by an existing party." *Jefferson*, 720 F.2d at 1517. That is, if the would-be intervenor's interests are sufficiently aligned with an existing party, the would-be intervenor would be bound by judgment in the case, but cannot claim prejudice because its interests will have been adequately protected; and if the movant has no identity of interest with a party, it cannot be bound by judgment in the case, and thus cannot be prejudiced. *Id*. That means there can be no prejudice if the movant can litigate its own case later to pursue whatever rights it claims to have. *Campbell*, 808 F.2d at 779. Here, Boucher will suffer no prejudice if it remains on the sidelines where it sat these last 18-24 months: either Boucher and the City are sufficiently aligned that the City will adequately represent Boucher (which is true, see below), or, Boucher can later sue the City if Penrod voids the RFP and contract (assuming a viable claim under an unlawful contract). *See Commodores Ent. Corp. v. McClary*, 822 F. App'x 904, 912 (11th Cir. 2020) (joinder improper where party could later sue to assert claims or damages on adjudicated contract/property); *In re W. Caribbean Airways Crew Members*, 2010 WL 11601239, at *9 (S.D. Fla. Jan. 8, 2010) (no prejudice where movant "d[id] not have a significantly greater stake than" existing party in a favorable outcome); *S.E.C. v. Creative Cap. Consortium, LLC*, 2015 WL 4077451, at *3 (S.D. Fla. July 6, 2015) (no prejudice where movant could challenge outcome of lawsuit in another forum).

Boucher suggests its "extensive experience and participation in the material facts at issue here" is relevant to intervention. Mot. at 8. It cites no authority suggesting that being a third-party witness is an "unusual circumstances" supporting intervention. Third party discovery is routine in civil litigation. What is unusual is that Boucher exited this case and then, two years later, wants back in. Unsurprisingly, Boucher did not cite—and we could not locate—a single case where a party was joined as a defendant, successfully sought dismissal, and then requested and was granted intervention back into that same case.

The law forbids exactly what Boucher is now attempting: opportunistically sitting on its rights for an extended period as the proper parties expend effort prosecuting the case. The Motion is

8

extremely untimely and should be denied on that basis alone; the Court's inquiry can end here.

## II.     Boucher Meets None of the Required Elements for Mandatory Intervention.

### A.      The City Adequately Protects Boucher's "Interests."

Intervention is prohibited where an existing party is already pursuing the same basic objectives the would-be intervenor wants to achieve. Where that existing party is a government actor, the would-be intervenor needs to overcome yet an additional presumption that its government adequately represents its interests, by evidencing "direct conflict" with the government party's goals in the lawsuit. Not only does Boucher fail to prove any of that, it openly admits the opposite: Boucher states that its ultimate goal is to validate the RFP and its contract, *identical* (not merely "the same") to the City's objectives. Boucher lists its proposed defenses, which are *identical* (not merely "the same") as the arguments and defenses already stated by the City here. And, remarkably, the City and Boucher have been working together and against Penrod in this lawsuit under a common interest/joint defense agreement—eviscerating the possibility of a "direct conflict" between the City's and Boucher's interests. The City is adequately representing Boucher's "interests" (if any), precluding intervention.

"We presume that a proposed intervenor's interest is adequately represented when an existing party pursues the *same ultimate objective* as the party seeking intervention." *U.S. v. Georgia*, 19 F.3d 1388, 1394 (11th Cir. 1994). Boucher thus must "overcome a presumption—that it is adequately represented—that arises when applicants for intervention seek to achieve the same objectives as an existing party in the case." *U.S. v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002). Boucher would need to make a "very compelling showing" to overcome that presumption here, because Boucher is aligned with its government: "Where the government is acting on behalf of a constituency it represents, as the Defendant City [of Miami Beach] is doing here, it is assumed that the government will adequately represent that constituency." *Bake House SB, LLC. v. City of Miami Beach*, 2017 WL 2645760, at *4 (S.D. Fla. June 20, 2017) (citing *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) ("In order to overcome this presumption, the would-be intervenor must make a *very compelling showing* that the government will not adequately represent its interest."); *Am. Nat. Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989) (presumption of adequate representation arises where a city is called on to defend official city action)).

There is no question that the City and Boucher are pursuing "the same ultimate objectives"— to defend the RFP and validate the City contract with Boucher for the Property. There is no question

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

about that because Boucher admits that those are its and the City's shared objectives, over and over, in its Motion. *See, e.g.*, Mot. at 1, 3, 8-9, 11.

More acutely, Boucher, *itself, demonstrates* that it and the City share not merely "the same" goals in this lawsuit, but that they are *identically aligned* in pursuit of *identical* defenses and *identical* objectives. Boucher, itself, demonstrates this because *every single* proposed affirmative defense Boucher requests to interject is <u>*identical*</u> to the defenses, arguments, and positions that the City has *already taken* in this case:

|  | Boucher Affirmative Defense (ECF No. [130-1]) | Claimed Nature of Boucher Affirmative Defense | <u>*Identical*</u> City Defense in City Motion to Dismiss (ECF No. [72]) and Reply (ECF No. [80]) |
|---|---|---|---|
| 1 | Lack of Subject Matter Jurisdiction due to Mootness | Repeal of April Resolution moots No Bid Claims | Mot. § I.A<br>Repl. § I.D, I.E |
| 2 | Lack of Standing due to Lack of Cognizable Injury | No injury for No Bid Claims because of repeal of April Resolution | Mot. § I.B.i<br>Repl. § I.A |
| 3 | Lack of Standing due to Failure to Submit Timely Proposal | No standing for Specification, Submission, Awards Claims because of timing of Penrod bid submission | Mot. § I.B<br>Repl. § I.A, I.B, I.C |
| 4 | Failure to State a Claim due to Lack of Protectable Property Interest | No due process claim because no property interest | Mot. § III.A.i<br>Repl. § II.F |
| 5 | Failure to State a Claim due to Lack of Violation of City Charter or Code | City conduct did not violate Charter or Code | Mot. § III.A.ii, C<br>Repl. § II.A-D |
| 6 | Failure to State a Claim due to Lack of Deprivation of Due Process | No due process claim because Penrod has adequate remedy at law by seeking injunctive relief | Mot. § III.A.iii<br>Repl. § II.F |
| 7 | Failure to State a Claim due to Lack of Protectable Liberty Interest | No due process because no protectable liberty interest in state-created procurement procedures | Mot. § III.A.iv<br>Repl. § II.F |
| 8 | Failure to State a Claim due to Lack of Actionable Legislative Action | No substantive due process claims because City actions were non-actionable executive acts | Mot. § III.B.i<br>Repl. § II.E |
| 9 | Failure to State a Claim due to City's Rational Basis for Challenged Action | City had rational basis for its actions | Mot. § III.B.ii<br>Repl. § II.E |
| 10 | Failure to State a Claim due to Lack of Sale or Lease of City Property | No Charter or Code violation because no sale or lease of City property | Mot. § III.C.i<br>Repl. § II.A |
| 11 | Failure to State a Claim due to RFP Compliance with City Code | No Charter or Code violation because RFP complied with same | Mot. § III.C.ii<br>Repl. § II.B |

10

| 12 | Failure to State a Claim due to City's Valid Exercise of Discretion to Reject Untimely Proposal | No Charter or Code violation because City acted within discretion to reject Penrod bid | Mot. § III.A.ii, III.C.iii Repl. § II.C |
|----|----|----|----|
| 13 | Failure to State a Claim due to Failure to Exhaust Administrative Remedies | No Charter or Code violation because Penrod did not exhaust administrative remedies | Mot. § III.C.iv Repl. § II.D |
| 14 | Failure to State a Claim due to Lack of Any Sale or Lease of City Property | No Charter or Code violation because no sale or lease of City property | Mot. § III.C.iv Repl. § II.D |
| 15 | Failure to State a Claim due to RFP Contract's Lack of Material Deviations from the RFP | No Charter or Code violation because Boucher contract does not materially deviate from RFP | Mot. § III.C.iv Repl. § II.D |
| 16 | Failure to State a Claim due to Lack of Demonstrable or Irreparable Harm | No harm to Penrod from any City conduct | Mot. § I.B.ii, III.D.ii Repl. § I.D. |
| 17 | Improper Demand to Supersede City's Proper Discretionary Power | No Submission Claims because City acted within discretionary power | Mot. § III.A.ii |

The City raised additional arguments in its papers, and can include additional defenses (even borrowing language from Boucher's draft, if it likes) when it answers. All of those defenses and arguments fail, but the point is that Boucher and the City are pursuing the very same defenses and the objectives, which is far more than is required to deny intervention where the existing party already is pursuing the same basic goals in the litigation.

Furthermore, the Eleventh Circuit (again, not cited by Boucher) consistently refuses intervention where, as here, there is "no difference between the objectives that the [government party] seeks to fulfil in this case and those of the [would-be intervenor]," and unless the would-be intervenor "show[s] that any [] additional interests the government may have are in *__direct conflict__* with its interest." *Miami*, 278 F.3d at 1179; *U.S. v. 60 Auto. Grilles*, 799 F. App'x 693, 697 (11th Cir. 2020); *see Athens Lumber Co. v. F.E.C.*, 690 F.2d 1364, 1366 (11th Cir. 1982) (no intervention where defense of shared interest "has been vigorously presented by the [government] throughout these proceedings"); *Georgia*, 19 F.3d at 1394 (no intervention where "absolutely no evidence in the record before us of gross negligence or bad faith on the part of the [government party] in pursuing this goal"); *Assoc. Indus. of Alabama, Inc. v. Train*, 543 F.2d 1159, 1160 (5th Cir. 1976) (no intervention despite that "the effect of a plaintiff's victory in this suit will be greater upon the [could-be intervenor] than upon the [government defendants]" because "[n]o claim or defense on behalf of [could-be intervenor] has been suggested which is not or will not be asserted by the [government]

11

defendants"). Boucher offers no argument, let alone any evidence, proving "direct conflict" between Boucher's and the City's interests.

What's more, Boucher and the City have confirmed and concretized the complete unity of their interests and goals by *asserting common interest and joint defense privileges* over their communications in this case. The City logged and withheld as privileged contemporaneous communications it had with Boucher, including calls and emails about Penrod's bid protests and the claims at issue here. The City and Boucher withheld later and ongoing communications between the City and Boucher about this lawsuit—including "attorney communications concerning strategy and coordination with counsel for Boucher, which remain protected under the attorney work product doctrine." It is impossible for Boucher to prove that it and the City do not share "the same" end-game in this lawsuit, and that it and the City had "directly conflicting" interests, when Boucher and the City are concededly coordinating their defenses and legal strategy in this case and shielding those communications behind attorney-client and work-product privileges.[4]

Remarkably, the common interest and joint defense arrangement that precludes Boucher's intervention also helps prove Penrod's claims on the merits. One of the central allegations here is that the "fix was in" (to borrow the Court's turn of phrase, *see* Ex. D at 20:9-10) for Boucher to win the Property from the get-go and throughout the window-dressing RFP process. The City maintains that it ran a clean process and Boucher independently submitted the best bid to win. But the City's privilege log, alone, proves that the City and Boucher jointly strategized to fight off Penrod's pre-claim protest of the RFP's improper terms and rules. That is, the City and Boucher were working hand-in-hand—while the RFP was still open, during the cone of silence, and while the City was meant to be neutrally considering all bidders—to undercut Penrod's attempt to have a fair competition, and hid those collusive communications behind the attorney-client privilege.

Against all of this, Boucher offers one suggestion, that "the City's interests in this matter do not completely overlap with those of Boucher" because "the City faces exposure for monetary damages under Penrod's claims, and may be incentivized to potentially settle to escape such liability, while Boucher is the only party whose sole interest is to protect the validity of the Boucher

---

[4] Boucher needs to adduce evidence, overcome this presumption, and meet its burden on the adequate protection element. It plainly has not. But if the Court has any factual question about the alignment of the City's and Boucher's interests in this case, it should afford Penrod discrete discovery on this issue, which Penrod has requested in the alternative (by separate and contemporaneously motion).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Concession Agreement." Mot. 11. Boucher offers no authority to support that argument, because courts in our Circuit squarely and consistently reject it. *See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007) (no intervention, rejecting "hypothes[is] that [government party] may have an increased incentive to compromise with [plaintiff] in settlement discussions because [intervenor], not [government party], bears the brunt of [relevant] costs"); *Williams Island Synagogue, Inc. v. City of Aventura*, 222 F.R.D. 554, 557 (S.D. Fla. 2004), *aff'd*, 138 F. App'x 299 (11th Cir. 2005) ("The Court finds the speculative argument that [the City] Defendant may choose to settle this litigation at some undetermined time in the future for political purposes is insufficient to overcome the presumption that the [would-be intervenor's] interests are now adequately represented by [the City] Defendant because the Court concludes that the two share an identical "ultimate objective" in this litigation."); *A.R. v. Dudek*, 2014 WL 12519764, at *3 (S.D. Fla. Apr. 7, 2014) ("Mere speculation that a claim may be settled, however, fails to demonstrate that intervention is warranted.").

Governing law dictates that the City adequately protects Boucher's interests in this case. Boucher has done nothing to rebut that presumption or prove otherwise. To the contrary. Its claimed objectives, its proposed defenses, and its joint defense arrangement with the City, all admit it. The Court should deny the Motion on this independent basis.

### B.   Boucher Has No Substantive Interest at Risk of Impairment.

Boucher variably characterizes its interests here as a "property interest" in its City lease (Mot. at 1, 3) or a generalized "interest in the competitive procurement process and contract award" (Mot. at 3) but at bottom concedes that its interests are *solely* economic: "defending its financial and contractual interests as the selected awardee," its "contractual and economic property interest" in its City contract, and its "interest in performing and receiving the economic benefit" from the contract (Mot at 1, 8, 10). But the Eleventh Circuit "has held that a legally protectable interest [for intervention] is something *more* than an economic interest." *Mt. Hawley*, 425 F.3d at 1311. It might be possible for a procurement awardee to have a separate legal interest supporting intervention.[5] But

---

[5] Although, not a single case cited by Boucher says so. Boucher makes the claim that "[t]he 11th Circuit Court of Appeals has routinely and consistently permitted the intervention of public contract awardees [] in suits challenging the validity of the procurement process under which the relevant public contract awards were made." Mot. at 9. Two of its cited cases are not even Eleventh Circuit decisions—they are out-of-District, lower court cases. *See McKnight Const. Co. v. Perry*, 888 F. Supp. 1178, 1185 n.1 (S.D. Ga. 1994) (noting party-*agreed* intervention); *Lloyd Wood Const. Co. v. Sandoval*, 318 F. Supp. 1167, 1169 (N.D. Ala. 1970) (same). Worse, **_none_** of Boucher's cases even adjudicated, much less

13

Boucher has not proven or supported that here. Boucher's economic interest in profits from its contract is alone insufficient.

Equally important, the only *legitimate* interest Boucher has is in a lawful contract that resulted from a lawful process—and this lawsuit does not impair Boucher's right to that. If (as Penrod will establish) the City's conduct, RFP, and contract, violated public procurement laws, and are voided, no relief sought by Penrod in this lawsuit prevents Boucher from participating in a second, Charter- and Code-compliant, process for the Property, and then reifying its current contract. Further, Boucher's position is that it won the project fair and square by submitting the best proposal, so it cannot claim impairment if the City ran another bid that Boucher (must claim, if this last RFP was actually proper) would just win again. In other words, this case will not "determine Boucher's contractual rights and obligations in its absence." Mot. at 4 (cleaned up). Boucher can reinstate or litigate whatever rights it has under its current contract if necessary after this case. *See ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (no impairment justifying intervention because success by plaintiff "will not impede [would-be intervenor's] ability later to be heard" if case outcome "affects [its] interests"); *Anderson Columbia Env't, Inc. v. U.S.*, 42 Fed. Cl. 880, 882 (1999) (no "practical impairment" to justify intervention by competing procurement bidder because case would have "no *stare decisis* effect" on it) (citing *Chiles*, 865 F.2d at 1214).

## III. Boucher Does Not Meet the Required Elements for Permissive Intervention.

### A. Intervention Will Substantially Prejudice Penrod.

The Court should deny Boucher permissive intervention because it would "unduly delay the adjudication of the rights of the parties in the lawsuit and makes it unlikely that any new light will be shed on the issues to be adjudicated." *Chiles*, 866 F. 2d at 1215.

"If a proposed intervenor would add additional witnesses, delay the discovery process, require additional discovery, or otherwise prolong litigation, permissive intervention should be denied." *Little River Transp., LLC v. Oink Oink, LLC*, 2023 WL 2931431, at *6 (S.D. Fla. Apr. 13, 2023); *see Burke*, 833 F. App'x at 294 (no permissive intervention that would have expanded the

---

permitted or affirmed, intervention. *See Mark Dunning Indus., Inc. v. Cheney*, 934 F.2d 266, 268 (11th Cir. 1991) (no discussion or opinion on intervention, *agreed* below); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1263 (5th Cir. 1978) (same); *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1354 (11th Cir. 1994) (noting joinder of indispensable party; no mention of intervention). This string-cite is perhaps the Motion's most egregious example of Boucher's blatant misstatements of the law. Boucher is not permitted to sandbag Penrod with new law and authority on reply. *See supra* p. 4.

"scope of discovery, which had already been underway for over a year"); *Wallace v. Norwegian Cruise Line Ltd.*, 2011 WL 13112227, at *3 (S.D. Fla. May 9, 2011) (no permissive intervention that would have forced party to compress discovery targeting intervenor or delay deadlines and trial to take that discovery); *Kennedy v. Desantis*, 2023 WL 11804228, at *7 (S.D. Fla. Mar. 29, 2023) (no permissive intervention that would "necessarily require the expansion of discovery").

Boucher pretends intervention is not prejudicial because "this case is at the earliest stage." Mot. at 13. That is blatantly false. Penrod has been engaged in arduous and voluminous discovery—procuring and analyzing documents, litigating discovery disputes, taking depositions, preparing and exchanging all expert reports—for a year and a half. Penrod was already forced to accede to an extension because of the City's discovery failures and delays. ECF No. [128]. The balance of the short six weeks remaining is already filled with a dozen depositions and resolution of several discovery disputes. Contrary to Boucher's position, adding Boucher as an additional party defendant will either, or both: (i) force Penrod to cram consequential document and deposition discovery of Boucher as a party defendant into a tiny and already full window, allowing Boucher to avoid the scrutiny of timely and extensive discovery; and (ii) force yet another deadline extension and trial continuance with additional discovery to address Boucher as a party defendant, all at considerable and unnecessary expense.

Delay is especially harmful to Penrod in this case because, absent the relief it seeks here, Penrod faces eviction in mid-2026; reputational harm, remedial operational expenses, and proactive mitigation costs (e.g., preparing to relocate Penrod's flagship Miami Beach business), all increase dramatically as that date approaches. This Court at its initial case management conference itself acknowledged that delays approaching the 2026 lease end would prejudice *both* Penrod and the City. Because Boucher offered no reason why it waited two years to intervene or what it could possibly contribute to this case (in new objectives or necessary discovery), we can only assume it intended, improperly, to gain the tactical advantages of litigation delay; harm to Penrod's business; and use this case as an improper vehicle to gain competitively sensitive details on its competitor, Penrod.[6]

Boucher's discovery conduct since its eleventh-hour Motion indicates just how disruptive its

---

[6] Indeed, Boucher has already demanded access to Penrod's competitive bidding details and proprietary and ongoing business-operational information under the guise of observing discovery. *See* Ex. F.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

presence will be—barring intervention. Despite waiting two years to file its Motion, Boucher did not wait for the Court to rule on it, and the next week demanded participation in ongoing and planned depositions. In addition to circumventing this Court's review of intervention, the demand was facially improper.[7] Moreover, this case is governed by a Protective Order, ECF No. [110], intended to keep Penrod's business operations, proprietary strategies, and trade secrets, confidential from competitors like Boucher. Boucher demanded participation the afternoon before a scheduled deposition. It refused to explain why it needed to attend that (or any) deposition rather than, e.g., reviewing the transcript and video once redacted for confidentiality and if the Court grants intervention.[8] This disrupted and partially delayed the deposition until Penrod was (for now) able to secure agreement to keep its information confidential; not to mention the time wasted back-and-forth conferring on the propriety of Boucher's demand instead of deposition preparation. That is the tip of the prejudice iceberg Boucher's intervention will inflict on discovery in this case.

Boucher's recent discovery conduct also exposes why intervention is entirely unnecessary even on Boucher's own terms. Boucher argues that it needs to intervene in order to assert a list of proposed defenses and to observe the discovery already being conducted by the parties (which Boucher says it will take as it lies). But Boucher's proposed defenses *are* present in this case, and Boucher is *already* observing depositions. All the while, Boucher is coordinating with the City under a common interest/joint defense arrangement. So even on Boucher own arguments, Boucher already has what it says it needs, without intervention.

---

[7] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial."); *U.S. v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. . . . If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe.").

[8] Because deposition notices are not publicly filed in this District (*see* S.D. Fla. L.R. 26.1(b)), Boucher only knew about the scheduled depositions because the City provided it that information. The City did this despite knowing that it would elicit confidential information at the depositions. Both the City and Boucher refused to discuss or disclose their communications about the depositions, Boucher's attendance, or about this case at all, invoking attorney-client and work product privileges. *In other words, the City and Boucher are working together under a common interest and/or joint defense agreement*. That by definition (and as discussed above) means that the City can adequately represent Boucher's interests here (such as they are), precluding intervention. It also means there is no practical reason for Boucher to attend depositions, already being taken and defended by its litigation partner.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Courts do not countenance intervention that might delay, disrupt, of expand discovery, as Boucher has done and will do here. The Court should deny the Motion on this independent basis.

**B.      Boucher's Intervention Will Implicate Facts and Issues Outside this Case.**

The Motion exposes two sets of facts currently outside this litigation that Boucher's intervention as a party defendant would implicate. Boucher asks to "defend[] its actions in the relevant procurement process" and protect the "substantial revenue" it hopes to gain from its City lease. Mot. 10-11. Permissive intervention requires common law and facts between the would-be intervenor's claims and the present action. *See Mt. Hawley*, 425 F.3d at 1312. This action will not decide, and therefore does not require legal or factual inquiry into, whether *Boucher*—as opposed to the *City*—acted properly.[9] And this action will not decide what profit (or anything else) Boucher stands to lose if the Court requires a renewed, this time fair, procurement process for the Property. Those facts and issues—the reasons Boucher gives for wanting to intervene—are irrelevant to this lawsuit. Boucher can litigate them elsewhere if it desires. But because Boucher's presence as a party defendant would expand the facts and issues in this case, the Court (for this additional reason) should deny permissive intervention.

**IV.     Alternatively, the Court Must Impose Strict Restrictions on Intervention.**

Boucher's intervention request abjectly fails, but if the Court is inclined to consider intervention, precedent demands that the Court protect Penrod and this case from delay and waste by imposing strict restrictions on Boucher's role and actions here.

Courts may impose *any* reasonable condition or limitation on intervention, whether mandatory or permissive. *See Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1322-23 (11th Cir. 1983) (reversing because trial court did not impose restrictions on evidence available to would-be mandatory intervenor); *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997). Binding precedent is unanimous that strict restrictions on pleading defenses,

---

[9] That is why *Mitchco Int'l, Inc. v. U.S.*, 149 Fed. Cl. 683 (2020) (cited in Mot. at 11-12) is inapposite. There, the plaintiff "directly targeted" a subcontractor, alleging that it "violated procurement law and committed fraud." *Id.* at 684-85. By contrast, here, Plaintiff alleges that the City violated its own procurement law; Penrod does not seek to establish misconduct or liability by Boucher; no finding or adjudication in this case will assign liability to Boucher for any such violations; so Boucher has no need to "defend[] its actions in the relevant procurement process." *Contra* Mot. at 11-12. Boucher's guilt will only be decided in this case if Boucher, by intervening, forces this litigation to explore those facts and determine that issue.

conducting discovery, and engaging in motion practice, are appropriate. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 373 (1987) (approving limitations on intervenor that it "*could not file any motions or conduct its own discovery*" to *inter alia* "minimize delay"); *U.S. v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991) (explaining court may "restrict" intervention to specific issues); *U.S. v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009) (approving denial of discovery and evidentiary hearings); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 64 (1st Cir. 2017) (holding "intervenors may be denied discovery, . . . cannot preclude other parties from settling their own disputes," and can be "restrict[ed] . . . to a particular set of issues").

The circumstances here necessitate strict restrictions on Boucher's intervention (if it were proper; it is not). Again: Boucher waited two years into this case and two months before the close of discovery to intervene; it seeks merely to duplicate the identical defenses already argued by the City; it claims it will add no new facts to the case but instead will merely "aid proper resolution" with its "experience and participation in the material facts at issue" (Mot. at 8); it claims that it takes the case "in the posture in which it finds it" and "will not delay the progress of these proceedings" (Mot. at 4); and (as detailed above) any expansion of the scope or costs of this case, or any delay in discovery or trial, will prejudice Penrod. Accordingly, the following limitations on Boucher's intervention will protect these proceedings and Penrod's timely access to justice:

- Boucher cannot plead its own defenses or claims.

- Boucher cannot conduct affirmative discovery.

- Boucher must respond to party discovery on an expedited basis (within ten (10) days).

- Boucher, as a competitor, must (consistent with the standing Protective Order) maintain strict, attorneys' eyes only protections on all discovery material designated as confidential by Penrod.

- Boucher cannot delay party discovery.

- Boucher cannot delay any Court deadline.

- Boucher cannot engage in independent motion practice or briefing before the Court, except to address an issue unique to Boucher and not addressed by any party, and only upon advance permission by the Court.

- Boucher cannot argue at hearings (unless invited by the Court).

- Boucher cannot participate at mediation nor disrupt settlement discussions (unless its participation is requested by both parties).

- Boucher cannot participate at trial (other than as a non-party).

18

Each of these limitations is supported by the above-cited case law and are together tailored to the needs of this case: Boucher and the City have the same (indeed, the identical) objectives and claims; Boucher offers no additional case-necessary discovery information beyond as a third-party witness; Boucher is a direct competitor to Penrod; Boucher chose to seek re-entry into this case after a year and a half of and with six weeks left in discovery; intervenors cannot stop the real parties in interest from settlement; and any delay will prejudice Penrod.

## V.      Boucher Failed to Confer.

The Court can also deny the Motion because Boucher refused to confer before filing it. This District's local rules require good faith conferral before filing a motion, and permit denial in its absence. *See* S.D. Fla. L. R. 7.1(a)(2); *Jordan v. Filippone*, 2021 WL 1601994, at *2 (S.D. Fla. Apr. 23, 2021) ("[F]ailure to confer . . . provides an alternative basis for the Court to deny the Movants' motion to intervene."). Here, Boucher emailed Penrod on a Friday afternoon to demand conferral by Monday. The email did not explain or justify intervention (presaging the Motion). Penrod's counsel explained that it had preplanned meetings, a hearing, and a deposition, on Friday and Monday, and offered to confer by phone Tuesday. Having waited 2 years, Boucher refused, and filed Monday morning, without conferral. Worse, the Motion misrepresents that "[c]ounsel for Penrod has stated that it does not take a position on Boucher Brothers' request to intervene." Mot. at 6. *That is false*. Penrod opposes Boucher's intervention. Penrod's counsel (as required) requested conferral to understand the basis for and level of Boucher's requested intervention and potentially to narrow issues ahead of this motion practice—the point of mandatory conferral. Boucher's refusal to confer provides the Court an additional and independent basis to deny the Motion.

## CONCLUSION

WHEREFORE, for the reasons and upon the authority provided herein, Penrod respectfully requests that the Court: deny Boucher's Motion to Intervene in full; in the alternative, suspend adjudication of the Motion to allow Penrod discovery as requested by separate motion; also in the alternative, condition intervention as provided herein; and grant Penrod such other relief as the Court deems just and proper.

19

Dated: April 29, 2025

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: 305-789-3200
Facsimile: 305-789-3395
By:  */s/  Jason S. Koslowe*
   MARIA A. FEHRETDINOV
   Florida Bar No. 52084
   mfehretdinov@stearnsweaver.com
   JASON S. KOSLOWE
   Florida Bar No. 122758
   jkoslowe@stearnsweaver.com
   RYAN T. THORNTON
   Florida Bar No. 99195
   rthornton@stearnsweaver.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on April 29, 2025, I electronically filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

| | |
|---|---|
| ROBERT F. ROSENWALD, JR., Chief Deputy City Attorney<br>HENRY J. HUNNEFELD, First Assistant City Attorney<br>FREDDI MACK, Senior Assistant City Attorney<br>henryhunnefeld@miamibeachfl.gov<br>robertrosenwald@miamibeachfl.gov<br>freddimack@miamibeachfl.gov<br>700 Convention Center Drive<br>4th Floor – Legal Department<br>Miami Beach, FL 33139<br><br>*Attorney for Defendant* | Eric P. Hockman, Esq.<br>Edward G. Guedes, Esq.<br>Anne R. Flaniganr, Esq.<br>WEISS SEROTA HELFMAN<br>COLE & BIERMAN, P.L.<br>2800 Ponce De Leon Blvd., Suite 1200<br>Coral Gables, FL 33134<br>ehockman@wsh-law.com<br>eguedes@wsh-law.com<br>aflanigan@wsh-law.com<br><br>*Attorneys for Defendant* |

                                        /s/ Jason S. Koslowe
                                        JASON S. KOSLOWE

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200