# EXHIBIT D

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     FORT LAUDERDALE DIVISION
                      CASE NO. 1:23-cv-23362-DSL
 3

 4
     PENROD BROTHERS INC.,                 Fort Lauderdale, Florida
 5
                      Plaintiff,           August 16, 2024
 6
              vs.                          10:00 AM - 10:28 AM
 7
     CITY OF MIAMI BEACH,
 8
                      Defendant.           Pages 1 to 28
 9   _____

10                      STATUS CONFERENCE
             BEFORE THE HONORABLE DAVID S. LEIBOWITZ
11                 UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13

14   FOR THE PLAINTIFF:          Jason S. Koslowe, Esquire
                                      -and-
15                               Maria Fehretdinov, Esquire
                                 Stearns Weaver Miller et al.
16                               150 West Flagler Street
                                 Suite 220
17                               Miami, Florida 33130

18   FOR THE DEFENDANT:          Anne R. Flanigan, Esquire
                                      -and-
19                               Eric P. Hockman, Esquire
                                 Weiss Serota Helfman et al.
20                               2800 Ponce de Leon Boulevard
                                 Suite 700
21                               Coral Gables, Florida 33134

22

23

24

25
```

2

1    STENOGRAPHICALLY REPORTED BY:

2                          PATRICIA BAILEY-ENTIN, FPR, RPR
                           Official Court Reporter before:
3                          Honorable David S. Leibowitz
                           United States District Court
4                          U.S. Federal Courthouse
                           299 East Broward Boulevard
5                          Fort Lauderdale, Florida 33301

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   (Call to the Order of the Court.)

 2             THE COURT:  Good morning, everybody.  Please be seated.

 3             Okay.  Ms. Shotwell, whenever you're ready.

 4             THE CLERK:  Calling the matter of Penrod Brothers Inc

 5    v. City of Miami Beach, Case Number 23-cv-23362.  Counsel,

 6    please announce your appearances for the record, beginning with

 7    the plaintiff.

 8             MS. FEHRETDINOV:  Good morning, Your Honor.  Maria

 9    Fehretdinov with Stearns Weaver Miller on behalf of Penrod.

10             MR. KOSLOWE:  Good morning, Your Honor.  Jason Koslowe

11    with Stearns Weaver for the plaintiff.

12             THE COURT:  Good morning.

13             MS. FLANIGAN:  Good morning, Your Honor.  Anne Flanigan

14    with Weiss Serota Helfman Cole and Bierman on behalf of the

15    City of Miami Beach.

16             MR. HOCKMAN:  Good morning, Your Honor.  Eric Hockman

17    with Weiss Serota Helfman Cole and Bierman on behalf of the

18    City of Miami Beach.

19             MS. MACK:  Good morning, Your Honor.  Freddi Mack the

20    City Attorney's Office.

21             THE COURT:  Good morning, everyone.  Please be seated.

22    It's nice to have everyone here.

23             You could not get a more Miami Beach kind of case than

24    this.  We have Nikki Beach.  We potentially have Boucher

25    Brothers in the mix.  We have, of course, the City.  And on top
```

1   of it all, we have Sterns Weaver and we have Weiss Serota.  I

2   mean, all we need is Gene Sterns and Joe Serota to come in in

3   Miami Dolphins jerseys -- and we're pretty much there.  It's

4   nice to see everybody.

5        There's a couple of things that I want to do today.

6   First, I guess, the easy one is there appears to be a double

7   filing on the record with an opposed motion for leave to amend.

8   That's ECF 61 and 62.  I just think it was filed twice.  Is

9   that right?

10       MR. KOSLOWE:  Yes, Your Honor.  It was an error in

11   filing at 61.  It was docketed wrong as a notice or request for

12   appeal.

13       THE COURT:  So 61 will be denied as moot.  62 remains.

14   With respect to 62, it says that it's unopposed.  Is it

15   unopposed?

16       MS. FLANIGAN:  That's correct, Your Honor.  However,

17   we're still reserving our rights to file the appropriate motion

18   to dismiss.

19       THE COURT:  That's fine.  So 62, motion for leave to

20   file the amended complaint, is granted because it is unopposed.

21   That then takes us to the meat of the day, which is, I have in

22   my hands, at 65, a joint conferral report and discovery plan.

23   On the back of it is kind of two pages in a spreadsheet form,

24   where the parties are setting forth the dates that they would

25   like.  You don't completely agree on everything.  I certainly

1   want to hear both sides as to why they think they need what

2   they ask for.

3          Let me just tell you, before you get up, where my mind

4   is at on a couple of things just because they stick out from

5   the proposed report.

6          The first is is that there seems to be a proposal to

7   bifurcate discovery into jurisdictional and merits discovery.

8   I'm open to persuasion, but I don't quite see it, as I sit

9   here.  I understand the City's point that if you, crudely put,

10  are timed out because of the software, you're kind of like not

11  even in the game and, therefore, that could be construed as

12  jurisdictional.

13         I'm sure that the plaintiffs would say that's rather

14  merits orientated because we need to get into the software and

15  whether the fix was in, and that's why we're here.  So that's

16  kind of point one.  I'll hear you if you think that there's

17  something that I'm missing on this bifurcation, but it seems to

18  me that it's all kind of the ball of wax and, therefore, should

19  be one discovery date.

20         Relatedly, you asked for, in a very creative way and

21  not really opposed -- you appear to want two bites at the

22  summary judgment apple, and I don't quite see that either in a

23  case like this.  But having said that, and because the

24  plaintiffs are the plaintiffs, who would like to address

25  anything you want with respect to scheduling?

 1          MS. FEHRETDINOV:  I think with the bifurcation issue

 2     with opposing counsel proposing the idea, we'd prefer that the

 3     City first argue that, and then we can respond.

 4          THE COURT:  Sure.

 5          MS. FLANIGAN:  No problem, Your Honor.  We see this

 6     case as a very simple and straightforward one with the issues

 7     of jurisdiction really as the upfront issues.  That being

 8     standing and mootness.  One half of the claims, as you're

 9     aware, addresses their failure to actually bid.  And you hinted

10     out at timing out.  We don't see it as timing out.  We see it

11     as they didn't bid.  It's no different than if you were to have

12     a filing deadline on CMECF on your notice of appeal.  The clock

13     goes from 11:59 to midnight and you're still uploading things,

14     that's not timing out.  That's just not filing the notice of

15     appeal.  So that's how --

16          THE COURT:  Fairly and succinctly stated.  I get it.

17          MS. FLANIGAN:  So that's how we view the standing

18     issues as far as failing to bid, and that's -- we think that

19     fails all of the claims.

20          There's also a mootness issue as to a resolution that

21     they're challenging that was rescinded a month after it was

22     enacted, and it never affected the plaintiffs.  I know they're

23     going to say completely different, but that's our perspective.

24          Because those issues we see upfront resolving the case,

25     we're proposing that jurisdictional discovery happen first.

 1    Magistrate Judge Augustin-Birch actually hinted that

 2    jurisdictional discovery was merited.  I do have a case for

 3    Your Honor that I will give to opposing counsel from the

 4    Eleventh Circuit that supports the proposition that where

 5    merits and jurisdiction is intertwined -- and we don't think

 6    they're intertwined here.  We think they are separate -- but to

 7    the extent that plaintiffs are going to argue that the merits

 8    and the jurisdiction issues are intertwined, the parties have a

 9    right to qualify jurisdictional discovery to settle that

10    jurisdictional question.  And that's American Civil Liberties

11    Union of Florida v. City of Sarasota, 859 F.3d 1337.  That's an

12    Eleventh Circuit case.

13         THE COURT:  I guess let me just ask it this way:  Judge

14    Birch is certainly more expert than I in dealing with these

15    kinds of issues, but I think you put it very well.  I think it

16    goes something like this:  It doesn't matter what our

17    preference was as a city.  It doesn't matter if there was all

18    kinds of shenanigans.  They're timed out.  There was a clear

19    date, and they're timed out.  I know you don't like that

20    phrase, but they didn't submit a bid on time.

21         So can't we just do that first?  Because they may say,

22    Yeah, we want to know that software company -- you know, that

23    goes to the actual submission of the bid.  That doesn't go to

24    the, let's call it, Boucher Brothers preference collusion

25    stuff, but we have a right to get into were we really timed out

```
 1     or not.  But once we do that, you make your motion.
 2          MS. FLANIGAN:  And I think that's exactly our
 3     perspective.
 4          THE COURT:  Okay.
 5          MS. FLANIGAN:  That's an excellent recap.  We focus on
 6     those issues first.  We file a jurisdictional motion, and then
 7     if it's granted, then we don't -- both sides do not have to go
 8     through the taxpayers' expense or private cost of doing merits
 9     discovery and hiring experts, et cetera.
10          If it's denied, then we continue on with the case, but
11     we at least got a vacuum where we can focus on issues that we
12     feel are dispositive up front.
13          THE COURT:  So in that sense, the Court crudely
14     misstated it at the top, which is, what I see with that is, as
15     long as there is a final discovery deadline that is
16     encompassing all of it -- I mean, I'm not going to tell them as
17     part of discovery, that this witness goes to the timing in,
18     timing out; that witness goes into collusion -- and I'm not
19     going to do that the City either if they want to get into
20     things.
21          So in that sense, maybe I was a ship passing in the
22     night and now I'm with you, which is I don't hear, then, you
23     would object to a single discovery deadline and then somewhere
24     about a third of the way through, you will have the ability to
25     file what I'm calling a "You are timed out" kind of motion.
```

1           What I don't want is I don't want essentially two

2     discoveries in this case.  This is a very uncomplicated case,

3     in my view, regardless of which side you're on.  So in that

4     sense, how do you feel about that?

5           MS. FLANIGAN:  So I think that our concern about having

6     the one summary judgment or the one discovery deadline -- I

7     think both sides kind of see the jurisdictional issues.  It's

8     very crystalized and it's a narrow, you know, pond of what

9     would need to be explored.  Our concern is that with the one

10    deadline, there's going to open up Pandora box to discovery on

11    issues on a case that we feel shouldn't even be before the

12    Court because there's no jurisdiction.

13          THE COURT:  I see.

14          MS. FLANIGAN:  That's our concern.  We shouldn't be

15    doing merits discovery on a case where there's no underlying

16    subject matter jurisdiction.  So let's address that issue

17    first.  The Court says, "Yes there is; no, there isn't," then

18    we have in our proposed scheduling order another four months to

19    do discovery.

20          And by the way, Your Honor, this case -- we have done

21    merits discovery on this case prior to walking in here.  So

22    it's not like we'll be starting from scratch.  Plaintiff has

23    taken two depositions.  We have produced over 500,000

24    documents.  We produced a lot of documents in discovery.

25          THE COURT:  That was helpful.  That was in the next set

1    of questions that I was going to ask.

2          MS. FLANIGAN:  The parties have engaged in discovery.

3    We have received objections from plaintiff and that is it --

4    but depositions have taken place.  So the four months that

5    we're proposing for the merits discovery we feel is a feasible

6    timeline should the case proceed because discovery has already

7    been ongoing since the inception of the case.

8          One thing I would like to address with the Court

9    regarding the two summary judgment deadlines, we're proposing

10   the jurisdictional discovery and a specific topical

11   jurisdictional summary judgment motion.  The parties are in

12   agreement that we need -- that multiple summary judgments make

13   sense in this case but for very, very different reasons.  We

14   are saying we want topical deadlines, one for jurisdiction and

15   one for merits.  Plaintiffs are not proposing any topical

16   limitations, which we object to because we feel if you're not

17   going to have a topical limitation, this could just lead to

18   papering the court file unnecessary, and there's no reason that

19   they couldn't file one summary judgment as is traditionally

20   done.

21         Their position was that -- and to paraphrase

22   Mr. Koslowe, that there are some discrete legal issues that

23   they feel they could raise in a summary judgment motion.  If

24   that's the case, I don't know why they can't file one motion at

25   the very end.  So that's why we say if we're going to have

```
 1   multiple summary judgment motions in this case, one should be
 2   jurisdictional and then the rest should be merits, damages, et
 3   cetera.
 4           THE COURT:  Thank you, Counsel.  Anything else you wish
 5   to address with respect to the JSR?
 6           MS. FLANIGAN:  I think I have covered it all.
 7           THE COURT:  Okay.
 8           MS. FLANIGAN:  Thank you for your time, Your Honor.
 9           THE COURT:  That was very helpful.
10           Okay.  Stearns Weaver.
11           MR. KOSLOWE:  That's right.
12           And, Your Honor, I think it's important not to lose
13   sight on what the case is about.  This is a case about public
14   corruption.  It's a little distressing, as a resident of Miami
15   Beach, that the City is so hesitant to have the public leaders
16   and the city officials come out, be deposed, and talk about why
17   they think they didn't do something wrong.  That's the nature
18   of the case.
19           In terms of -- in terms of these structural issues with
20   discovery, there is no jurisdictional discovery in this case.
21   Jurisdictional discovery is discovery that would term the
22   Court's jurisdiction, that would say, "You no longer have the
23   case."  This Court's already decided that the issue they want
24   to probe will not term jurisdiction, right?  The magistrate
25   judge said -- I'm quoting from the report -- "Even if defendant
```

```
 1    is correct that the party lacks standing in such an

 2    instance" -- in other words, where they're "timed out," as

 3    Your Honor said -- "that conclusion would not support

 4    dismissing all of plaintiff's claims."

 5            We have a whole bevy of claims that under well settled

 6    Florida and federal law survive regardless of this timed-out

 7    issue.  So even if we missed the deadline, we didn't put the

 8    bid in, we still get to sue and say, Hey, this initial

 9    procedure you had was an unlawful no-bid procedure.  Hey, the

10    specifications you had, these rules -- they're unlawful anyway;

11    so you have to redo the whole thing.

12            And by the way, the law says even if we didn't bid at

13    all, we still have standing to sue about the award on the back

14    end because we're injured by it and it's a violation of law.

15    So there's no standing issue here.  And the courts already

16    decided that.

17            I mean, put the Court in the following context:  If

18    there was a pending motion to dismiss that raised the standing

19    issue and they said, Let's stay discovery or limit discovery

20    only to jurisdiction while the motion to dismiss is pending --

21    the law in this district so strongly disfavors it.  What

22    Your Honor would need to do is take a preliminary peek -- you

23    know the case law well -- and say, Is this a goner?  Is this a

24    done deal?  And only then -- and there's prejudice to the other

25    side when you stay discovery.  Well, we're past that; right?
```

```
 1   That ship has sailed.  They lost the motion to dismiss on

 2   standing, and they're entitled to raise it as a affirmative

 3   defense -- and no one is stopping them.  If they think this,

 4   quote-unquote, "standing issue is important," go ahead.  As

 5   they say in the old county, (Speaking a foreign language).  Go

 6   ahead, take whatever discovery you want.  Take it at the front

 7   end if they want to.  No one is stopping them from doing it,

 8   but there's no reason to bar us from engaging in merits

 9   discovery.  And that ties in, Your Honor, to the issue of two

10   motions for summary judgment.

11        We agree there should be.  Why do we think there should

12   be?  Not because we think there will be a case-dispositive

13   jurisdictional issue.  It's because we think there are case

14   dispositive legal issues that don't require recourse to further

15   discovery, but there are other issues in the case which we

16   think after discovery will resolve factual disputes and be

17   amenable to summary judgment.

18        THE COURT:  What are some of the examples of the first

19   one?

20        MR. KOSLOWE:  Sure.

21        THE COURT:  Summary judgment on issues that do not

22   resolve the case but put certain things to bed.

23        MR. KOSLOWE:  Well, I'll give you a very discrete and

24   concrete example and it will help explain how it also helps

25   with discovery.  The first six claims that we have are what we
```

```
 1    call the "no bid claims."  There's was a resolution in April,
 2    and we say it violates the law because it was no bid procedure.
 3    Now, if we're right about that, that's a discreet issue of law.
 4    The Court can look at the resolution and say, I think that
 5    plaintiff is right.  This is a no bid procedure.  It violates
 6    the code, and the code is written; so you can look at that.  If
 7    we're right, those claims are done.  You don't have to look at
 8    discovery.
 9         Now, they may say, No, that's not what it says.  You've
10    got to take parol evidence.  What's parol evidence in this
11    case?  Depose all the commissioners and the mayor to find out
12    what they really meant when they wrote that thing; right?  Then
13    we wouldn't get summary judgment, and we would know what to
14    focus on in fact discovery.  We don't want to waste everyone's
15    time.  I don't want the commissioners coming in for deposition
16    rather than doing their job; right?  So that's why it makes
17    sense to have a motion for summary judgment on a discrete legal
18    issue up at the front end.
19         If Your Honor says yes, that part of the case is
20    done --
21         (Reporter requests clarification.)
22         MR. KOSLOWE:  This is not the first time I have been
23    asked to slow down by the court reporter.
24         I think I have made the example clear because by
25    focusing on the legal issue, we not only help the Court resolve
```

the case --

THE COURT:  Let me just say, Counsel, I think that you
made very good points.  You both do.  I think that, to be very
candid with you -- I think it comes out in the wash.  I think
that the attempt, the sincere attempt, the good faith attempt
by the City and plaintiff to save resources and the Court's
time by parsing and slicing and allowing for things to go off
the table, I think that when you both do it and you both slice
it, I think I'm back to where I started, which is I think that
I don't know how much time we'll be saving.

I think that what's safer and what this Court feels
very strongly about, which is why the one thing I do disagree
with plaintiff's counsel on is what we have now is, thanks to
Magistrate Birch, the Court prior to me before this was
transferred to me, what we have now is we have a pleading
that's filed that is no longer a shotgun pleading.  So
defendants get to take their shot and move to dismiss something
that this is it.  This is, you know -- I think this is a fifth
amended complaint.  It's no longer shotgun.  It's fifth
amended.  They're going to take their shot on a motion to
dismiss.  I get to construe every single fact and statement and
inference in favor of plaintiff, and you'll tell me whether it
stays or goes.  Once we're done with that, I just think we're
going to have discovery.  And I got to tell you, if they can't
convince me that it should go, with the light most favorable to

```
1    the plaintiff, then you get to have at it.  Because I do agree
2    with plaintiff's counsel that being timed out because of a
3    computer program and as stated -- and I don't think the papers,
4    as I see it, really challenge this -- there's a deadline that
5    is in the rule.  It doesn't get rid of other claims.  And those
6    other claims, parties before me, with obviously excellent
7    counsel, are the master of their claims and defenses.  And I
8    can't really see, from where I sit, as to who needs to be
9    deposed; what is satisfied with interrogatories; Oh, we reached
10   a point where there's now an issue where that could be partial
11   summary judgment on those claims -- once we start to get into
12   that, just to be candid with both of you, which is why I
13   appreciate your JSR, what I intend to do is kind of take these
14   comments and mix them up and then give you what I think, from
15   your own JSR, all sides can agree with, as a fair amount of
16   time.  And then the dates are not going to move.  They're just
17   -- but for good cause and extraordinary circumstances, they're
18   not going to move.
19         The City has the right to know whether things need to
20   be reopened up, as the plaintiff has it, or the plaintiffs need
21   to know, Oh, he actually said we lose and so we need to appeal
22   him and we have to have time to do that before, I think,
23   roughly two years from now.
24         Is that right?  Two years from --
25         MR. KOSLOWE:  May of '26.
```

1          THE COURT:  May of '26.

2          MR. KOSLOWE:  Yeah.

3          THE COURT:  So I'm going to be way out of the way so

4   that the parties in this case can actually get the relief and

5   the legal redress and the review, if necessary, that actually

6   makes a difference to a long-time business owner if they

7   prevail or if they lose -- same thing with the City.

8          Anything else you want me to know?

9          MR. KOSLOWE:  Two very small comments, Your Honor.

10  One, just to make sure it's on the record -- and I'm sure

11  Your Honor is aware -- it says fifth amended complaint.  The

12  reality is these were supplemental complaints.  We sued at the

13  point of the no bid, and then as the process developed required

14  says a certain new claims because the discrete issues arose.

15         THE COURT:  I get it.

16         MR. KOSLOWE:  That's just a point on the record.

17  That's all.

18         THE COURT:  I'm not casting any aspersions by the

19  Number 5.

20         Let me also say, because neither of you addressed it,

21  there's a little bit of a flavor in report about adding

22  parties.  And let's say -- let me read it.  You want a specific

23  deadline of November 21st, 2024, or two weeks -- or within two

24  weeks of the motion to dismiss decision to file all motions and

25  amend pleadings or to join parties.  That seems to be

1    unopposed; right?

2         MR. KOSLOWE:  I think the concept was -- what typically

3    happens in a motion to dismiss is if it's denied, then two

4    weeks from then the defendant asserts their pleading and their

5    defenses.  And if it's granted in part, then there may be

6    occasion for the plaintiff to amend or to join.  So it just

7    makes sense to set that rather than have a deadline go past and

8    the parties are amending the pleadings anyway afterwards just

9    to set that deadline.

10         THE COURT:  That's fine.  I think my concern is -- and

11   I don't know if it's even thought of by either side -- if

12   you're actually talking about the possibility of adducing

13   discovery which may lead to the joinder of new parties, that's

14   got to happen well before the end of the discovery deadline.

15   You guys are proposing roughly a three-month period from now.

16   So whatever discovery you would need to adduce that would then

17   give you a good faith basis to add, let's say, hypothetically a

18   Boucher Brothers, that's got to happen within those three

19   months.  And so I guess it's my kind of signal to the parties

20   that even though I want one date out there for discovery, if

21   you feel that because of other dates that one side or the other

22   is precluding you from getting the facts that you need in a

23   motion to amend and add parties is coming, you're going to have

24   to take that up with me or Judge Birch.

25         MR. KOSLOWE:  Totally understood, Your Honor.  And,

1    candidly, Boucher -- right?  -- that's the elephant in the

2    room.  It's our view they shouldn't be in the case.  They're

3    going to ask under Rule 19 that they should be joined, but

4    we're going to oppose.  So that's an issue, but we're not

5    looking to amend.

6            THE COURT:  Counsel.

7            MS. FLANIGAN:  Yes, Your Honor.  Boucher was originally

8    in the case.  Plaintiffs struck them.  We previously raised the

9    issue of failure to join indispensable parties so plaintiff is

10   on notice of this issue.  We most likely will raise it again.

11   So as Your Honor signaled, this is their fifth amended

12   complaint.  I understand plaintiff's position that they've

13   added things along the way as things developed; however, we

14   agree this should be the last shot at the apple.  They're on

15   notice of the failure to join indispensable party issue.  So

16   the reason we worded it this way in the deadline is we had it

17   just as a date to answer and file affirmative defenses.  Then,

18   well, we weren't sure what your order would say; therefore, we

19   kind of expanded it to include different possibilities of what

20   Your Honor could rule on the motion to dismiss.  That's why

21   it's not just a specific answer deadline.

22           THE COURT:  Okay.

23           MR. KOSLOWE:  And just so we're clear:  On joiner, the

24   parties will disagree on the Rule 19 issue.  The law is clear

25   that if the Court were to decide that there was failure to join

1   the party and that party is indispensable, then we would need

2   to be granted leave to add that party.  That's why I put that.

3          THE COURT:  I understand.  And I will tell you that

4   there's certainly a fair construing of the fifth amended

5   complaint that we don't need a single 'nother person in this

6   complaint.  The City will educate the Court if they disagree at

7   the appropriate time.  What I see is kind of what you both have

8   said this morning, which is there's kind of "Are they timed out

9   or not?"  I know you hate the phrase.  And then there's, let's

10  call it, collusion, corruption, the "fix is in" kind of claims.

11  Those are the two buckets that we're in.  Maybe some stay;

12  maybe some go.  Maybe all stay; maybe all go.

13         But in that light -- and I'm sorry for butchering the

14  name -- the Boucher Brothers, they don't need to be in the

15  complaint.  They're suing the City because they timed them out

16  unfairly or they colluded, meaning the City colluded.  But

17  again, you'll have your bite of the apple, and you'll educate

18  the Court.

19         Anything else we need to do today, Counsel?

20         MR. KOSLOWE:  There was one scheduling issue, which is

21  that -- and the Court will deal with that in the Court's wisdom

22  in terms of the schedule.  But if we can avoid the middle of

23  September, during the Jewish holiday season for trial, that

24  would be excellent.

25         THE COURT:  Thank you for putting that on the record.

```
 1    Any weddings or holidays besides the Jewish holidays that I
 2    need to be concerned about?
 3         MR. HOCKMAN:  Only one.  I had blocked out a three-week
 4    period at the end of October for a vacation that I haven't had
 5    in two years.  So I'm going to ask to make sure that I can get
 6    to do that.
 7         THE COURT:  Okay.  But that doesn't preclude, you know,
 8    discovery.  You're saying, "Please no court date during those
 9    three weeks."  Is that what you're saying?
10         MR. HOCKMAN:  Probably.  Although I'm the lead attorney
11    in this case, and I've handled all the discovery up to this
12    point; so...
13         THE COURT:  Just tell me what you're asking for so that
14    my wonderful law clerk and I understand.
15         MR. HOCKMAN:  I appreciate that, Your Honor.  Just
16    making sure the Court is aware -- yes, I would appreciate no
17    hearings.  Obviously, Ms. Flanagan is extremely capable, and
18    I'm sure that I can work with the plaintiff's attorneys to keep
19    that separate.
20         THE COURT:  No problem.  I'm glad we put those kinds of
21    things on the record.  We're going to lay out a pretty lengthy
22    schedule.  You'll get our scheduling order by Tuesday, for
23    sure.  That will be the latest.
24         And then what I care about all the parties knowing from
25    this Court is that -- because you see 16 other judges and
```

1    magistrate judges.  I can tell you in a case like this good

2    cause is going to mean good cause.  So if you have a problem

3    with my order, my scheduling order -- large or small, vacation,

4    holiday or something -- you should tell me within seven to ten

5    days because if I don't hear it now, it's going to be good

6    cause or you're going to be timed out.  And I don't say that in

7    any way other than I really appreciate excellent counsel, and

8    they deserve to know where the goalposts are and what everyone

9    is held to.  Okay?

10           Anything else we need to do?

11           Okay.  We're recessed on this.

12           (The hearing was concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

                    C E R T I F I C A T E

3

4

5          I hereby certify that the foregoing is an

6   accurate transcription of the proceedings in the

7   above-entitled matter.

8

9

    DATE:  9/24/24          /s/Patricia Bailey-Entin
10                          PATRICIA BAILEY-ENTIN, FPR, RPR
                            Official Court Reporter
11                          United States District Court
                            Southern District of Florida
12                          U.S. Federal Courthouse
                            299 East Broward Boulevard
13                          Fort Lauderdale, Florida 33301

14

15

16

17

18

19

20

21

22

23

24

25

**-**

**'26** [2] - 16:25, 17:1
**'nother** [1] - 20:5

**/**

**/s/Patricia** [1] - 23:9

**1**

**1** [1] - 1:8
**10:00** [1] - 1:6
**10:28** [1] - 1:6
**11:59** [1] - 6:13
**1337** [1] - 7:11
**150** [1] - 1:16
**16** [2] - 1:5, 21:25
**19** [2] - 19:3, 19:24
**1:23-cv-23362-DSL**
  [1] - 1:3

**2**

**2024** [2] - 1:5, 17:23
**21st** [1] - 17:23
**220** [1] - 1:16
**23-cv-23362** [1] - 3:5
**2800** [1] - 1:20
**299** [2] - 2:4, 23:12

**3**

**33130** [1] - 1:17
**33134** [1] - 1:21
**33301** [2] - 2:4, 23:13

**5**

**5** [1] - 17:19
**500,000** [1] - 9:23

**6**

**61** [3] - 4:8, 4:11, 4:13
**62** [4] - 4:8, 4:13, 4:14,
  4:19
**65** [1] - 4:22

**7**

**700** [1] - 1:20

**8**

**859** [1] - 7:11

**9**

**9/24/24** [1] - 23:9

**A**

**ability** [1] - 8:24
**above-entitled** [1] -
  23:7
**accurate** [1] - 23:6
**actual** [1] - 7:23
**add** [3] - 18:17, 18:23,
  20:2
**added** [1] - 19:13
**adding** [1] - 17:21
**address** [4] - 5:24,
  9:16, 10:8, 11:5
**addressed** [1] - 17:20
**addresses** [1] - 6:9
**adduce** [1] - 18:16
**adducing** [1] - 18:12
**affected** [1] - 6:22
**afterwards** [1] - 18:8
**agree** [5] - 4:25,
  13:11, 16:1, 16:15,
  19:14
**agreement** [1] - 10:12
**ahead** [2] - 13:4, 13:6
**al** [2] - 1:15, 1:19
**allowing** [1] - 15:7
**AM** [2] - 1:6
**amenable** [1] - 13:17
**amend** [5] - 4:7,
  17:25, 18:6, 18:23,
  19:5
**amended** [6] - 4:20,
  15:19, 15:20, 17:11,
  19:11, 20:4
**amending** [1] - 18:8
**American** [1] - 7:10
**amount** [1] - 16:15
**Anne** [1] - 1:18, 3:13
**announce** [1] - 3:6
**answer** [2] - 19:17,
  19:21
**anyway** [2] - 12:10,
  18:8
**appeal** [4] - 4:12, 6:12,
  6:15, 16:21
**appear** [1] - 5:21
**APPEARANCES** [1] -
  1:12
**appearances** [1] - 3:6
**apple** [3] - 5:22, 19:14,
  20:17
**appreciate** [4] - 16:13,
  21:15, 21:16, 22:7
**appropriate** [2] - 4:17,
  20:7
**April** [1] - 14:1
**argue** [2] - 6:3, 7:7
**arose** [1] - 17:14
**aspersions** [1] - 17:18

**asserts** [1] - 18:4
**attempt** [3] - 15:5
**attorney** [1] - 21:10
**Attorney's** [1] - 3:20
**attorneys** [1] - 21:18
**August** [1] - 1:5
**Augustin** [1] - 7:1
**Augustin-Birch** [1] -
  7:1
**avoid** [1] - 20:22
**award** [1] - 12:13
**aware** [3] - 6:9, 17:11,
  21:16

**B**

**BAILEY** [2] - 2:1,
  23:10
**Bailey** [1] - 23:9
**BAILEY-ENTIN** [2] -
  2:1, 23:10
**Bailey-Entin** [1] - 23:9
**ball** [1] - 5:18
**bar** [1] - 13:8
**basis** [1] - 18:17
**BEACH** [1] - 1:17
**Beach** [6] - 3:5, 3:15,
  3:18, 3:23, 3:24,
  11:15
**bed** [1] - 13:22
**BEFORE** [1] - 1:10
**beginning** [1] - 3:6
**behalf** [3] - 3:9, 3:14,
  3:17
**bevy** [1] - 12:5
**bid** [12] - 6:9, 6:11,
  6:18, 7:20, 7:23,
  12:8, 12:9, 12:12,
  14:1, 14:2, 14:5,
  17:13
**Bierman** [2] - 3:14,
  3:17
**bifurcate** [1] - 5:7
**bifurcation** [2] - 5:17,
  6:1
**Birch** [4] - 7:1, 7:14,
  15:14, 18:24
**bit** [1] - 17:21
**bite** [1] - 20:17
**bites** [1] - 5:21
**blocked** [1] - 21:3
**Boucher** [6] - 3:24,
  7:24, 18:18, 19:1,
  19:7, 20:14
**Boulevard** [3] - 1:20,
  2:4, 23:12
**box** [1] - 9:10
**BROTHERS** [1] - 1:4
**Brothers** [5] - 3:4,
  3:25, 7:24, 18:18,

**20:14**
**Broward** [2] - 2:4,
  23:12
**buckets** [1] - 20:11
**business** [1] - 17:6
**butchering** [1] - 20:13
**BY** [1] - 1:25

**C**

**candid** [2] - 15:4,
  16:12
**candidly** [1] - 19:1
**capable** [1] - 21:17
**care** [1] - 21:24
**case** [36] - 3:23, 5:23,
  6:6, 6:24, 7:2, 7:12,
  8:10, 9:2, 9:11, 9:15,
  9:20, 9:21, 10:6,
  10:7, 10:13, 10:24,
  11:1, 11:13, 11:18,
  11:20, 11:23, 12:23,
  13:12, 13:13, 13:15,
  13:22, 14:11, 14:19,
  15:1, 17:4, 19:2,
  19:8, 21:11, 22:1
**Case** [1] - 3:5
**CASE** [1] - 1:3
**case-dispositive** [1] -
  13:12
**casting** [1] - 17:18
**certain** [2] - 13:22,
  17:14
**certainly** [3] - 4:25,
  7:14, 20:4
**certify** [1] - 23:5
**cetera** [2] - 8:9, 11:3
**challenge** [1] - 6:21
**challenging** [1] - 6:21
**Circuit** [2] - 7:4, 7:12
**circumstances** [1] -
  16:17
**CITY** [1] - 1:7
**city** [3] - 3:5, 7:17,
  11:16
**City** [14] - 3:15, 3:18,
  3:20, 3:25, 6:3, 7:11,
  8:19, 11:15, 15:6,
  16:19, 17:7, 20:6,
  20:15, 20:16
**City's** [1] - 5:9
**Civil** [1] - 7:10
**claims** [13] - 6:8, 6:19,
  12:4, 12:5, 13:25,
  14:1, 14:7, 16:5,
  16:6, 16:7, 16:11,
  17:14, 20:10
**clarification** [1] -
  14:21
**clear** [4] - 7:18, 14:24,

**19:23, 19:24**
**clerk** [1] - 21:14
**CLERK** [1] - 3:4
**clock** [1] - 6:12
**CMECF** [1] - 6:12
**code** [2] - 14:6
**Cole** [2] - 3:14, 3:17
**colluded** [1] - 20:16
**collusion** [3] - 7:24,
  8:18, 20:10
**coming** [2] - 14:15,
  18:23
**comments** [2] - 16:14,
  17:9
**commissioners** [2] -
  14:11, 14:15
**company** [1] - 7:22
**complaint** [7] - 4:20,
  15:19, 17:11, 19:12,
  20:5, 20:6, 20:15
**complaints** [1] - 17:12
**completely** [2] - 4:25,
  6:23
**computer** [1] - 16:3
**concept** [1] - 18:2
**concern** [4] - 9:5, 9:9,
  9:14, 18:10
**concerned** [1] - 21:2
**concluded** [1] - 22:12
**conclusion** [1] - 12:3
**concrete** [1] - 13:24
**CONFERENCE** [1] -
  1:10
**conferral** [1] - 4:22
**construe** [1] - 15:21
**construed** [1] - 5:11
**construing** [1] - 20:4
**context** [1] - 12:17
**continue** [1] - 8:10
**convince** [1] - 15:25
**Coral** [1] - 1:21
**correct** [2] - 4:16, 12:1
**corruption** [2] - 11:14,
  20:10
**cost** [1] - 8:8
**Counsel** [3] - 11:4,
  15:2, 20:19
**counsel** [8] - 3:5, 6:2,
  7:3, 15:13, 16:2,
  16:7, 19:6, 22:7
**county** [1] - 13:5
**couple** [2] - 4:5, 5:4
**course** [1] - 3:25
**court** [3] - 10:18,
  14:23, 21:8
**Court** [20] - 2:2, 2:3,
  3:1, 8:13, 9:12, 9:17,
  10:8, 12:17, 14:4,
  14:25, 15:11, 15:14,

19:25, 20:6, 20:18, 20:21, 21:16, 21:25, 23:10, 23:11
**COURT** [31] - 1:1, 3:2, 3:12, 3:21, 4:13, 4:19, 6:4, 6:16, 7:13, 8:4, 8:13, 9:13, 9:25, 11:4, 11:7, 11:9, 13:18, 13:21, 15:2, 17:1, 17:3, 17:15, 17:18, 18:10, 19:6, 19:22, 20:3, 20:25, 21:7, 21:13, 21:20
**Court's** [4] - 11:22, 11:23, 15:6, 20:21
**Courthouse** [2] - 2:3, 23:12
**courts** [1] - 12:15
**covered** [1] - 11:6
**creative** [1] - 5:20
**crudely** [1] - 5:9, 8:13
**crystalized** [1] - 9:8

## D

**damages** [1] - 11:2
**DATE** [1] - 23:9
**date** [5] - 5:19, 7:19, 18:20, 19:17, 21:8
**dates** [3] - 4:24, 16:16, 18:21
**DAVID** [1] - 1:10
**David** [1] - 2:2
**days** [1] - 22:5
**de** [1] - 1:20
**deadline** [13] - 6:12, 8:15, 8:23, 9:6, 9:10, 12:7, 16:4, 17:23, 18:7, 18:9, 18:14, 19:16, 19:21
**deadlines** [2] - 10:9, 10:14
**deal** [2] - 12:24, 20:21
**dealing** [1] - 7:14
**decide** [1] - 19:25
**decided** [2] - 11:23, 12:16
**decision** [1] - 17:24
**Defendant** [1] - 1:8
**defendant** [2] - 11:25, 18:4
**DEFENDANT** [1] - 1:18
**defendants** [1] - 15:17
**defense** [1] - 13:3
**defenses** [3] - 16:7, 18:5, 19:17
**denied** [3] - 4:13, 8:10, 18:3
**depose** [1] - 14:11

**deposed** [2] - 11:16, 16:9
**deposition** [1] - 14:15
**depositions** [2] - 9:23, 10:4
**deserve** [1] - 22:8
**developed** [2] - 17:13, 19:13
**difference** [1] - 17:6
**different** [4] - 6:11, 6:23, 10:13, 19:19
**disagree** [3] - 15:12, 19:24, 20:6
**discoveries** [1] - 9:2
**discovery** [42] - 4:22, 5:7, 5:19, 6:25, 7:2, 7:9, 8:9, 8:15, 8:17, 8:23, 9:6, 9:10, 9:15, 9:19, 9:21, 9:24, 10:2, 10:5, 10:6, 10:10, 11:20, 11:21, 12:19, 12:25, 13:6, 13:9, 13:15, 13:16, 13:25, 14:8, 14:14, 15:24, 18:13, 18:14, 18:16, 18:20, 21:8, 21:11
**discreet** [1] - 14:3
**discrete** [4] - 10:22, 13:23, 14:17, 17:14
**disfavors** [1] - 12:21
**dismiss** [9] - 4:18, 12:18, 12:20, 13:1, 15:17, 15:21, 17:24, 18:3, 19:20
**dismissing** [1] - 12:4
**dispositive** [3] - 8:12, 13:12, 13:14
**disputes** [1] - 13:16
**distressing** [1] - 11:14
**district** [1] - 12:21
**District** [3] - 2:3, 23:11, 23:11
**DISTRICT** [3] - 1:1, 1:2, 1:11
**DIVISION** [1] - 1:2
**docketed** [1] - 4:11
**documents** [2] - 9:24
**Dolphins** [1] - 4:3
**done** [6] - 9:20, 10:20, 12:24, 14:7, 14:20, 15:23
**double** [1] - 4:6
**down** [1] - 14:23
**during** [2] - 20:23, 21:8

## E

**East** [2] - 2:4, 23:12

**easy** [1] - 4:6
**ECF** [1] - 4:8
**educate** [2] - 20:6, 20:17
**either** [3] - 5:22, 8:19, 18:11
**elephant** [1] - 19:1
**Eleventh** [2] - 7:4, 7:12
**enacted** [1] - 6:22
**encompassing** [1] - 8:16
**end** [6] - 10:25, 12:14, 13:7, 14:18, 18:14, 21:4
**engaged** [1] - 10:2
**engaging** [1] - 13:8
**Entin** [1] - 23:9
**ENTIN** [2] - 2:1, 23:10
**entitled** [2] - 13:2, 23:7
**Eric** [2] - 1:19, 3:16
**error** [1] - 4:10
**Esquire** [4] - 1:14, 1:15, 1:18, 1:19
**essentially** [1] - 9:1
**et** [4] - 1:15, 1:19, 8:9, 11:2
**evidence** [1] - 14:10
**exactly** [1] - 8:2
**example** [1] - 13:24, 14:24
**examples** [1] - 13:18
**excellent** [4] - 8:5, 16:6, 20:24, 22:7
**expanded** [1] - 19:19
**expense** [1] - 8:8
**expert** [1] - 7:14
**experts** [1] - 8:9
**explain** [1] - 13:24
**explored** [1] - 9:9
**extent** [1] - 7:7
**extraordinary** [1] - 16:17
**extremely** [1] - 21:17

## F

**F.3d** [1] - 7:11
**fact** [2] - 14:14, 15:21
**facts** [1] - 18:22
**factual** [1] - 13:16
**failing** [1] - 6:18
**fails** [1] - 6:19
**failure** [4] - 6:9, 19:9, 19:15, 19:25
**fair** [2] - 16:15, 20:4
**fairly** [1] - 6:16
**faith** [2] - 15:5, 18:17

**far** [1] - 6:18
**favor** [1] - 15:22
**favorable** [1] - 15:25
**feasible** [1] - 10:5
**federal** [1] - 12:6
**Federal** [2] - 2:3, 23:12
**Fehretdinov** [2] - 1:15, 3:9
**FEHRETDINOV** [2] - 3:8, 6:1
**fifth** [5] - 15:18, 15:19, 17:11, 19:11, 20:4
**file** [9] - 4:17, 4:20, 8:6, 8:25, 10:18, 10:19, 10:24, 17:24, 19:17
**filed** [2] - 4:8, 15:16
**filing** [4] - 4:7, 4:11, 6:12, 6:14
**final** [1] - 8:15
**fine** [2] - 4:19, 18:10
**first** [10] - 4:6, 5:6, 6:3, 6:25, 7:21, 8:6, 9:17, 13:18, 13:25, 14:22
**fix** [2] - 5:15, 20:10
**Flagler** [1] - 1:16
**Flanagan** [1] - 21:17
**FLANIGAN** [12] - 3:13, 4:16, 6:5, 6:17, 8:2, 8:5, 9:5, 9:14, 10:2, 11:6, 11:8, 19:7
**Flanigan** [2] - 1:18, 3:13
**flavor** [1] - 17:21
**FLORIDA** [1] - 1:1
**Florida** [8] - 1:4, 1:17, 1:21, 2:4, 7:11, 12:6, 23:11, 23:13
**focus** [3] - 8:5, 8:11, 14:14
**focusing** [1] - 14:25
**following** [1] - 12:17
**FOR** [2] - 1:14, 1:18
**foregoing** [1] - 23:5
**foreign** [1] - 13:5
**form** [1] - 4:23
**FORT** [1] - 1:2
**Fort** [3] - 1:4, 2:4, 23:13
**forth** [1] - 4:24
**four** [2] - 9:18, 10:4
**FPR** [2] - 2:1, 23:10
**Freddi** [1] - 3:19
**front** [3] - 8:12, 13:6, 14:18

## G

**Gables** [1] - 1:21

**game** [1] - 5:11
**Gene** [1] - 4:2
**glad** [1] - 21:20
**goalposts** [1] - 22:8
**goner** [1] - 12:23
**granted** [4] - 4:20, 8:7, 18:5, 20:2
**guess** [3] - 4:6, 7:13, 18:19
**guys** [1] - 18:15

## H

**half** [1] - 6:8
**handled** [1] - 21:11
**hands** [1] - 21:2
**hate** [1] - 20:9
**hear** [4] - 5:1, 5:16, 8:22, 22:5
**hearing** [1] - 22:12
**hearings** [1] - 21:17
**held** [1] - 22:9
**Helfman** [3] - 1:19, 3:14, 3:17
**help** [2] - 13:24, 14:25
**helpful** [2] - 9:25, 11:9
**helps** [1] - 13:24
**hereby** [1] - 23:5
**hesitant** [1] - 11:15
**hinted** [2] - 6:9, 7:1
**hiring** [1] - 8:9
**HOCKMAN** [5] - 3:16, 11:11, 21:3, 21:10, 21:15
**Hockman** [2] - 1:19, 3:16
**holiday** [2] - 20:23, 22:4
**holidays** [2] - 21:1
**Honor** [23] - 3:8, 3:10, 3:13, 3:16, 3:19, 4:10, 4:16, 6:5, 7:3, 9:20, 11:8, 11:12, 12:3, 12:22, 13:9, 14:19, 17:9, 17:11, 18:25, 19:7, 19:11, 19:20, 21:15
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:2
**hypothetically** [1] - 18:17

## I

**idea** [1] - 6:2
**important** [2] - 11:12, 13:4
**INC** [1] - 1:4
**Inc** [1] - 3:4

**inception** [1] - 10:7
**include** [1] - 19:19
**indispensable** [3] - 19:9, 19:15, 20:1
**inference** [1] - 15:22
**initial** [1] - 12:8
**injured** [1] - 12:14
**instance** [1] - 12:2
**intend** [1] - 16:13
**interrogatories** [1] - 16:9
**intertwined** [3] - 7:5, 7:6, 7:8
**issue** [20] - 6:1, 6:20, 9:16, 11:23, 12:7, 12:15, 12:19, 13:4, 13:9, 13:13, 14:3, 14:18, 14:25, 16:10, 19:4, 19:9, 19:10, 19:15, 19:24, 20:20
**issues** [16] - 6:6, 6:7, 6:18, 6:24, 7:8, 7:15, 8:6, 8:11, 9:7, 9:11, 10:22, 11:19, 13:14, 13:15, 13:21, 17:14

## J

**Jason** [2] - 1:14, 3:10
**jerseys** [1] - 4:3
**Jewish** [2] - 20:23, 21:1
**job** [1] - 14:16
**Joe** [1] - 4:2
**join** [5] - 17:25, 18:6, 19:9, 19:15, 19:25
**joinder** [1] - 18:13
**joined** [1] - 19:3
**joiner** [1] - 19:23
**joint** [1] - 4:22
**JSR** [3] - 11:5, 16:13, 16:15
**judge** [2] - 7:13, 11:25
**JUDGE** [1] - 1:11
**Judge** [2] - 7:1, 18:24
**judges** [2] - 21:25, 22:1
**judgment** [13] - 5:22, 9:6, 10:9, 10:11, 10:19, 10:23, 11:1, 13:10, 13:17, 13:21, 14:13, 14:17, 16:11
**judgments** [1] - 10:12
**jurisdiction** [9] - 6:7, 7:5, 7:8, 9:12, 9:16, 10:14, 11:22, 11:24, 12:20
**jurisdictional** [14] - 5:7, 5:12, 6:25, 7:2, 7:9, 7:10, 8:6, 9:7,

10:10, 10:11, 11:2, 11:20, 11:21, 13:13

## K

**keep** [1] - 21:18
**kind** [13] - 3:23, 4:23, 5:10, 5:16, 5:18, 8:25, 9:7, 16:13, 18:19, 19:19, 20:7, 20:8, 20:10
**kinds** [3] - 7:15, 7:18, 21:20
**knowing** [1] - 21:24
**Koslowe** [3] - 1:14, 3:10, 10:22
**KOSLOWE** [13] - 3:10, 4:10, 13:20, 13:23, 14:22, 16:25, 17:2, 17:9, 17:16, 18:2, 18:25, 19:23, 20:20

## L

**lacks** [1] - 12:1
**language)** [1] - 13:5
**large** [1] - 22:3
**last** [1] - 19:14
**latest** [1] - 21:23
**LAUDERDALE** [1] - 1:2
**Lauderdale** [3] - 1:4, 2:4, 23:13
**law** [9] - 12:6, 12:12, 12:14, 12:21, 12:23, 14:2, 14:3, 19:24, 21:14
**lay** [1] - 21:21
**lead** [3] - 10:17, 18:13, 21:10
**leaders** [1] - 11:15
**least** [1] - 8:11
**leave** [3] - 4:7, 4:19, 20:2
**legal** [5] - 10:22, 13:14, 14:17, 14:25, 17:5
**Leibowitz** [1] - 2:2
**LEIBOWITZ** [1] - 1:10
**lengthy** [1] - 21:21
**Leon** [1] - 1:20
**Liberties** [1] - 7:10
**light** [2] - 15:25, 20:13
**likely** [1] - 19:10
**limit** [1] - 12:19
**limitation** [1] - 10:17
**limitations** [1] - 10:16
**long-time** [1] - 17:6
**look** [3] - 14:4, 14:6, 14:7

**looking** [1] - 19:5
**lose** [3] - 11:12, 16:21, 17:7
**lost** [1] - 13:1

## M

**MACK** [1] - 3:19
**Mack** [1] - 3:19
**Magistrate** [1] - 15:14
**magistrate** [2] - 7:1, 11:24, 22:1
**Maria** [2] - 1:15, 3:8
**master** [1] - 16:7
**matter** [5] - 3:4, 7:16, 7:17, 9:16, 23:7
**mayor** [1] - 14:11
**mean** [4] - 4:2, 8:16, 12:17, 22:2
**meaning** [1] - 20:16
**meant** [1] - 14:12
**meat** [1] - 4:21
**merited** [1] - 7:2
**merits** [11] - 5:7, 5:14, 7:5, 7:7, 8:8, 9:15, 9:21, 10:5, 10:15, 11:2, 13:8
**MIAMI** [1] - 1:7
**Miami** [7] - 1:17, 3:5, 3:15, 3:18, 3:23, 4:3, 11:14
**middle** [1] - 20:22
**midnight** [1] - 6:13
**Miller** [2] - 1:15, 3:9
**mind** [1] - 5:3
**missed** [1] - 12:7
**missing** [1] - 5:17
**misstated** [1] - 8:14
**mix** [2] - 3:25, 16:14
**month** [2] - 6:21, 18:15
**months** [3] - 9:18, 10:4, 18:19
**moot** [1] - 4:13
**mootness** [2] - 6:8, 6:20
**morning** [9] - 3:2, 3:8, 3:10, 3:12, 3:13, 3:16, 3:19, 3:21, 20:8
**most** [2] - 15:25, 19:10
**motion** [18] - 4:7, 4:17, 4:19, 8:1, 8:6, 8:25, 10:11, 10:23, 10:24, 12:18, 12:20, 13:1, 14:17, 15:20, 17:24, 18:3, 18:23, 19:20
**motions** [3] - 11:1,

13:10, 17:24
**move** [3] - 15:17, 16:16, 16:18
**MR** [18] - 3:10, 3:16, 4:10, 11:11, 13:20, 13:23, 14:22, 16:25, 17:2, 17:9, 17:16, 18:2, 18:25, 19:23, 20:20, 21:3, 21:10, 21:15
**MS** [15] - 3:8, 3:13, 3:19, 4:16, 6:1, 6:5, 6:17, 8:2, 8:5, 9:5, 9:14, 10:2, 11:6, 11:8, 19:7
**multiple** [2] - 10:12, 11:1

## N

**name** [1] - 20:14
**narrow** [1] - 9:8
**nature** [1] - 11:17
**necessary** [1] - 17:5
**need** [17] - 4:2, 5:1, 5:14, 9:9, 10:12, 12:22, 16:19, 16:20, 16:21, 18:16, 18:22, 20:1, 20:5, 20:14, 20:19, 21:2, 22:10
**needs** [1] - 16:8
**never** [1] - 6:22
**new** [2] - 17:14, 18:13
**next** [1] - 9:25
**nice** [2] - 3:22, 4:4
**night** [1] - 8:22
**Nikki** [1] - 3:24
**NO** [1] - 1:3
**no-bid** [1] - 12:9
**notice** [5] - 4:11, 6:12, 6:14, 19:10, 19:14
**November** [1] - 17:23
**Number** [2] - 3:5, 17:19

## O

**object** [2] - 8:23, 10:16
**objections** [1] - 10:3
**obviously** [2] - 16:6, 21:17
**occasion** [1] - 18:6
**October** [1] - 21:4
**OF** [2] - 1:2, 1:7
**Office** [1] - 3:20
**Official** [2] - 2:2, 23:10
**officials** [1] - 11:16
**old** [1] - 13:5
**once** [3] - 8:1, 15:23,

16:11
**one** [23] - 4:6, 5:16, 5:19, 6:6, 6:8, 9:6, 9:9, 10:8, 10:14, 10:15, 10:19, 10:24, 11:1, 13:3, 13:7, 13:19, 15:12, 17:10, 18:20, 18:21, 20:20, 21:3
**ongoing** [1] - 10:7
**open** [2] - 5:8, 9:10
**oppose** [1] - 19:4
**opposed** [2] - 4:7, 5:21
**opposing** [2] - 6:2, 7:3
**Order** [1] - 3:1
**order** [5] - 9:18, 19:18, 21:22, 22:3
**orientated** [1] - 5:14
**originally** [1] - 19:7
**own** [1] - 16:15
**owner** [1] - 17:6

## P

**pages** [1] - 4:23
**Pages** [1] - 1:8
**Pandora** [1] - 9:10
**papering** [1] - 10:18
**papers** [1] - 16:3
**paraphrase** [1] - 10:21
**parol** [2] - 14:10
**parsing** [1] - 15:7
**part** [3] - 8:17, 14:19, 18:5
**partial** [1] - 16:10
**parties** [15] - 4:24, 7:8, 10:2, 10:11, 16:6, 17:4, 17:22, 17:25, 18:8, 18:13, 18:19, 18:23, 19:9, 19:24, 21:24
**party** [5] - 12:1, 19:15, 20:1, 20:2
**passing** [1] - 8:21
**past** [2] - 12:25, 18:7
**PATRICIA** [2] - 2:1, 23:10
**peek** [1] - 12:22
**pending** [2] - 12:18, 12:20
**PENROD** [1] - 1:4
**Penrod** [2] - 3:4, 3:9
**period** [2] - 18:15, 21:4
**person** [1] - 20:5
**perspective** [2] - 6:23, 8:3
**persuasion** [1] - 5:8
**phrase** [2] - 7:20, 20:9

**place** [1] - 10:4
**plaintiff** [11] - 3:7, 3:11, 9:22, 10:3, 14:5, 15:6, 15:22, 16:1, 16:20, 18:6, 19:9
**Plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:14
**plaintiff's** [5] - 12:4, 15:13, 16:2, 19:12, 21:18
**plaintiffs** [8] - 5:13, 5:24, 6:22, 7:7, 10:15, 16:20, 19:8
**plan** [1] - 4:22
**pleading** [3] - 15:15, 15:16, 18:4
**pleadings** [2] - 17:25, 18:8
**point** [6] - 5:9, 5:16, 16:10, 17:13, 17:16, 21:12
**points** [1] - 15:3
**Ponce** [1] - 1:20
**pond** [1] - 9:8
**position** [2] - 10:21, 19:12
**possibilities** [1] - 19:19
**possibility** [1] - 18:12
**potentially** [1] - 3:24
**preclude** [1] - 21:7
**precluding** [1] - 18:22
**prefer** [1] - 6:2
**preference** [2] - 7:17, 7:24
**prejudice** [1] - 12:24
**preliminary** [1] - 12:22
**pretty** [2] - 4:3, 21:21
**prevail** [1] - 17:7
**previously** [1] - 19:8
**private** [1] - 8:8
**probe** [1] - 11:24
**problem** [3] - 6:5, 21:20, 22:2
**procedure** [4] - 12:9, 14:2, 14:5
**proceed** [1] - 10:6
**proceedings** [1] - 23:6
**process** [1] - 17:13
**produced** [2] - 9:23, 9:24
**program** [1] - 16:3
**proposal** [1] - 5:6
**proposed** [2] - 5:5, 9:18
**proposing** [6] - 6:2, 6:25, 10:5, 10:9, 10:15, 18:15
**proposition** [1] - 7:4

**public** [2] - 11:13, 11:15
**put** [7] - 5:9, 7:15, 12:7, 12:17, 13:22, 20:2, 21:20
**putting** [1] - 20:25

**Q**

**qualify** [1] - 7:9
**questions** [1] - 10:1
**quite** [2] - 5:8, 5:22
**quote** [1] - 13:4
**quote-unquote** [1] - 13:4
**quoting** [1] - 11:25

**R**

**raise** [3] - 10:23, 13:2, 19:10
**raised** [2] - 12:18, 19:8
**rather** [3] - 5:13, 14:16, 18:7
**reached** [1] - 16:9
**read** [1] - 17:22
**ready** [1] - 3:3
**reality** [1] - 17:12
**really** [7] - 5:21, 6:7, 7:25, 14:12, 16:4, 16:8, 22:7
**reason** [3] - 10:18, 13:8, 19:16
**reasons** [1] - 10:13
**recap** [1] - 8:5
**received** [1] - 10:3
**recessed** [1] - 22:11
**record** [6] - 3:6, 4:7, 17:10, 17:16, 20:25, 21:21
**recourse** [1] - 13:14
**redo** [1] - 12:11
**redress** [1] - 17:5
**regarding** [1] - 10:9
**regardless** [2] - 9:3, 12:6
**relatedly** [1] - 5:20
**relief** [1] - 17:4
**remains** [1] - 4:13
**reopened** [1] - 16:20
**report** [4] - 4:22, 5:5, 11:25, 17:21
**REPORTED** [1] - 1:25
**reporter** [2] - 14:21, 14:23
**Reporter** [2] - 2:2, 23:10
**request** [1] - 4:11
**requests** [1] - 14:21

**require** [1] - 13:14
**required** [1] - 17:13
**rescinded** [1] - 6:21
**reserving** [1] - 4:17
**resident** [1] - 11:14
**resolution** [2] - 6:20, 14:1, 14:4
**resolve** [3] - 13:16, 13:22, 14:25
**resolving** [1] - 6:24
**resources** [1] - 15:6
**respect** [3] - 4:14, 5:25, 11:5
**respond** [1] - 6:3
**rest** [1] - 11:2
**review** [1] - 17:5
**rid** [1] - 16:5
**rights** [1] - 4:17
**room** [1] - 19:2
**roughly** [2] - 16:23, 18:15
**RPR** [2] - 2:1, 23:10
**rule** [2] - 16:5, 19:20
**Rule** [2] - 19:3, 19:24
**rules** [1] - 12:10

**S**

**safer** [1] - 15:11
**sailed** [1] - 13:1
**Sarasota** [1] - 7:11
**satisfied** [1] - 16:9
**save** [1] - 15:6
**saving** [1] - 15:10
**schedule** [2] - 20:22, 21:22
**scheduling** [5] - 5:25, 9:18, 20:20, 21:22, 22:3
**scratch** [1] - 9:22
**season** [1] - 20:23
**seated** [2] - 3:2, 3:21
**see** [14] - 4:4, 5:8, 5:22, 6:5, 6:10, 6:24, 8:14, 9:7, 9:13, 16:4, 16:8, 20:7, 21:25
**sense** [6] - 8:13, 8:21, 9:4, 10:13, 14:17, 18:7
**separate** [2] - 7:6, 21:19
**September** [1] - 20:23
**Serota** [3] - 1:19, 3:14, 3:17, 4:1, 4:2
**set** [3] - 9:25, 18:7, 18:9
**setting** [1] - 4:24
**settle** [1] - 7:9
**settled** [1] - 12:5
**seven** [1] - 22:4

**shenanigans** [1] - 7:18
**ship** [2] - 8:21, 13:1
**shot** [3] - 15:17, 15:20, 19:14
**shotgun** [2] - 15:16, 15:19
**Shotwell** [1] - 3:3
**side** [4] - 9:3, 12:25, 18:11, 18:21
**sides** [4] - 5:1, 8:7, 9:7, 16:15
**sight** [1] - 11:13
**signal** [1] - 18:19
**signaled** [1] - 19:11
**simple** [1] - 6:6
**sincere** [1] - 15:5
**single** [3] - 8:23, 15:21, 20:5
**sit** [2] - 5:8, 16:8
**six** [1] - 13:25
**slice** [1] - 15:8
**slicing** [1] - 15:7
**slow** [1] - 14:23
**small** [2] - 17:9, 22:3
**so..** [1] - 21:12
**software** [3] - 5:10, 5:14, 7:22
**somewhere** [1] - 8:23
**sorry** [1] - 20:13
**SOUTHERN** [1] - 1:2
**Southern** [1] - 23:11
**Speaking** [1] - 13:5
**specific** [3] - 10:10, 17:22, 19:21
**specifications** [1] - 12:10
**spreadsheet** [1] - 4:23
**standing** [6] - 6:8, 6:17, 12:1, 12:13, 12:15, 12:18, 13:2, 13:4
**start** [1] - 16:11
**started** [1] - 15:9
**starting** [1] - 9:22
**statement** [1] - 15:21
**States** [2] - 2:3, 23:11
**STATES** [2] - 1:1, 1:11
**STATUS** [1] - 1:10
**stay** [4] - 12:19, 12:25, 20:11, 20:12
**stays** [1] - 15:23
**Stearns** [4] - 1:15, 3:9, 3:11, 11:10
**STENOGRAPHICALLY** [1] - 1:25
**Sterns** [2] - 4:1, 4:2
**stick** [1] - 5:4
**still** [4] - 4:17, 6:13,

12:8, 12:13
**stopping** [2] - 13:3, 13:7
**straightforward** [1] - 6:6
**Street** [1] - 1:16
**strongly** [2] - 12:21, 15:12
**struck** [1] - 19:8
**structural** [1] - 11:19
**stuff** [1] - 7:25
**subject** [1] - 9:16
**submission** [1] - 7:23
**submit** [1] - 7:20
**succinctly** [1] - 6:16
**sue** [2] - 12:8, 12:13
**sued** [1] - 17:12
**suing** [1] - 20:15
**Suite** [2] - 1:16, 1:20
**summary** [14] - 5:22, 9:6, 10:9, 10:11, 10:12, 10:19, 10:23, 11:1, 13:10, 13:17, 13:21, 14:13, 14:17, 16:11
**supplemental** [1] - 17:12
**support** [1] - 12:3
**supports** [1] - 7:4
**survive** [1] - 12:6

**T**

**table** [1] - 15:8
**taxpayers'** [1] - 8:8
**ten** [1] - 22:4
**term** [2] - 11:21, 11:24
**terms** [3] - 11:19, 20:22
**THE** [34] - 1:10, 1:14, 1:18, 3:2, 3:4, 3:12, 3:21, 4:13, 4:19, 6:4, 6:16, 7:13, 8:4, 8:13, 9:13, 9:25, 11:4, 11:7, 11:9, 13:18, 13:21, 15:2, 17:1, 17:3, 17:15, 17:18, 18:10, 19:6, 19:22, 20:3, 20:25, 21:7, 21:13, 21:20
**therefore** [3] - 5:11, 5:18, 19:18
**they've** [1] - 19:12
**third** [1] - 8:24
**three** [4] - 18:15, 18:18, 21:3, 21:9
**three-month** [1] - 18:15
**three-week** [1] - 21:3
**ties** [1] - 13:9

**timed** [11] - 5:10, 7:18, 7:19, 7:25, 8:25, 12:2, 12:6, 16:2, 20:8, 20:15, 22:6
**timed-out** [1] - 12:6
**timeline** [1] - 10:6
**timing** [5] - 6:10, 6:14, 8:17, 8:18
**today** [2] - 4:5, 20:19
**top** [2] - 3:25, 8:14
**topical** [4] - 10:10, 10:14, 10:15, 10:17
**totally** [1] - 18:25
**traditionally** [1] - 10:19
**transcription** [1] - 23:6
**transferred** [1] - 15:15
**trial** [1] - 20:23
**Tuesday** [1] - 21:22
**twice** [1] - 4:8
**two** [14] - 4:23, 5:21, 9:1, 9:23, 10:9, 13:9, 16:23, 16:24, 17:9, 17:23, 18:3, 20:11, 21:5
**typically** [1] - 18:2

## U

**U.S** [2] - 2:3, 23:12
**uncomplicated** [1] - 9:2
**under** [2] - 12:5, 19:3
**underlying** [1] - 9:15
**understood** [1] - 18:25
**unfairly** [1] - 20:16
**Union** [1] - 7:11
**United** [2] - 2:3, 23:11
**UNITED** [2] - 1:1, 1:11
**unlawful** [2] - 12:9, 12:10
**unnecessary** [1] - 10:18
**unopposed** [4] - 4:14, 4:15, 4:20, 18:1
**unquote** [1] - 13:4
**up** [8] - 5:3, 8:12, 9:10, 14:18, 16:14, 16:20, 18:24, 21:11
**upfront** [2] - 6:7, 6:24
**uploading** [1] - 6:13

## V

**vacation** [2] - 21:4, 22:3
**vacuum** [1] - 8:11
**view** [3] - 6:17, 9:3,

19:2
**violates** [2] - 14:2, 14:5
**violation** [1] - 12:14
**vs** [1] - 1:6

## W

**walking** [1] - 9:21
**wash** [1] - 15:4
**waste** [1] - 14:14
**wax** [1] - 5:18
**Weaver** [5] - 1:15, 3:9, 3:11, 4:1, 11:10
**weddings** [1] - 21:1
**week** [1] - 21:3
**weeks** [4] - 17:23, 17:24, 18:4, 21:9
**Weiss** [4] - 1:19, 3:14, 3:17, 4:1
**West** [1] - 1:16
**whole** [2] - 12:5, 12:11
**wisdom** [1] - 20:21
**wish** [1] - 11:4
**witness** [2] - 8:17, 8:18
**wonderful** [1] - 21:14
**worded** [1] - 19:16
**words** [1] - 12:2
**written** [1] - 14:6
**wrote** [1] - 14:12

## Y

**years** [3] - 16:23, 16:24, 21:5