UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-23362-LEIBOWITZ/AUGUSTIN-BIRCH

PENROD BROTHERS, INC.,

    Plaintiff,

v.

CITY OF MIAMI BEACH, FLORIDA,

    Defendant.
_____/

## BOUCHER BROTHERS PIER PARK, LLC'S
## REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

Boucher Brothers Pier Park, LLC ("Boucher"), by and through its undersigned counsel, respectfully submits its Reply in Support of its Motion to Intervene [DE 130] (the "Motion"). As set forth below, Boucher is entitled to intervene as a matter of right or, alternatively, the circumstances here plainly weigh in favor of Boucher's permissive intervention.

### Introduction

Boucher's right to intervene in this matter is based upon its status as a party to the same public contract that Plaintiff Penrod Brothers, Inc. ("Penrod") seeks to rescind through its claims in this matter – a public contract under which Boucher is currently performing and expending significant funds in furtherance of. As identified via multiple case citations below, a public contract awardee's right to intervene in cases brought by disappointed bidders challenging a public procurement process' outcome is a well-recognized and commonplace principle in all government jurisdictions – whether the procurement process at issue arises out of a federal, state or local government procurement process.

Penrod's Response in Opposition to the Motion [DE 150] (the "Response") fails to address or even acknowledge the numerous court and administrative decisions concerning intervention of public contract awardees in cases challenging public procurement processes, and instead relies on generalized case law discussing the overall principle of intervention in run-of-the-mill commercial cases that do not discuss the specific and well-recognized interests of a public contract awardee in cases such as the instant matter, where a losing bidder like Penrod seeks to overturn the results of the competitive public procurement process that it failed to win. The instant case seeks to overturn the outcome of a public procurement process that resulted in a contract award – in such cases, it is well established across federal, state and local jurisdictions that the awardee of the public contract at issue has the right to intervene to defend its unique interests.

In addition, Penrod's argument regarding the timeliness of when Boucher sought to intervene in this matter is a red herring that is directly contradicted by the procedural posture of this case and this Court's operative scheduling order. The operative Fifth Amended Complaint was filed in this matter on August 19, 2024 [DE 69], and was closely followed by a Motion to Dismiss the Fifth Amended Complaint (the "Motion to Dismiss") filed by Defendant, City of Miami Beach (the "City") on September 3, 2024 [DE 72]. Boucher carefully reviewed the Motion to Dismiss, which included an argument that Penrod failed to join Boucher as an indispensable party. Mindful of not wasting judicial resources, and believing strongly in the legal merits of the City's Motion to Dismiss, Boucher waited to see whether the Fifth Amended Complaint would be dismissed before seeking intervention in this matter. However, once the Court entered its Amended Scheduling Order on March 18, 2025 [DE 128] while the Motion to Dismiss was still pending, Boucher decided to seek intervention prior to expiration of any pre-trial deadlines – including the deadline to add additional parties.

Lastly, Boucher's intervention in this matter will not cause any undue delay to the adjudication of this case or prejudice to Penrod. To be clear, Boucher: (1) does not seek to repeat any depositions that have already taken place in this matter (and have, in fact, taken the initiative to observe depositions in this matter to avoid any such repeating); (2) will not serve any discovery that is duplicative of discovery requests that have already been served by either party to this matter; and (3) does not seek to extend any of this Court's operative pre-trial deadlines in this case. Further, Penrod has been fully aware of Boucher's interest in this matter from its inception, previously brought related claims against Boucher before Boucher established the lack of any valid legal basis for such claims, and has voluntarily chosen to not take discovery from Boucher in this federal proceeding. Accordingly, Penrod will not suffer any undue prejudice from Boucher's intervention in this matter. To the contrary, as conclusively set out in case law cited below, Boucher will suffer extreme prejudice if it is precluded as a public contract awardee from intervening in what amounts to a continued bid protest action seeking to overturn the public contract awarded to Boucher.

## **Argument**

### I. The City Does Not Sufficiently Represent Boucher's Unique Interests in this Matter

One of Penrod's main arguments in opposition to Boucher's intervention is that any interest that Boucher has in this case is sufficiently represented by the City. This argument fails to understand the unique interests of a private contractor to defend its public contract award within the context of a legal challenges to that award such as the one brought by Penrod here, separate and apart from the interests of the public entity that made the contract award in the first place.

Within the context of public contract awards by the federal government, the U.S. Court of Federal Claims has exclusive jurisdiction to hear legal challenges to such awards. In discussing intervention by public contract awardees in such challenges, the U.S. Court of Claims has

3

consistently and repeatedly noted that "as many decisions observe, **in bid protests the government and the offerors have distinct interests**." *Superior Optical Labs, Inc. v. United States*, 171 Fed. Cl. 50, 54 (2024) (citing *Air Borealis Ltd. P'ship v. United States*, 162 Fed. Cl. 778, 782 (2022); *Mitchco Int'l, Inc. v. United States*, 149 Fed. Cl. 683, 685 (2020); *Winston-Salem Indus. for the Blind, Inc. v. United States*, 144 Fed. Cl. 644, 645 (2019); *Northrop Grumman Info. Tech., Inc. v. United States*, 74 Fed. Cl. 407, 418 (2006); *CHE Consulting, Inc. v. United States*, 71 Fed. Cl. 634, 635 (2006)). This is so because, "**when the government acts as a market participant — not as the sovereign — its 'specific litigation goals' differ from those of offerors**" because "**[t]he government wants to defend its procurement processes and receive contractual performance; the offerors want to receive an award and get paid for work**." *Id.*

This difference in interest between a public awarding agency like the City and a public contract awardee such as Boucher can manifest in multiple ways within the context of a legal challenge to the public contract award. For example, "**if forced to choose, the [City] would defend its institutional interest in agency procurement processes instead of [Boucher's] business interests**" or "**might deny procedural errors that [Boucher] would concede and defend as harmless. Or the [City] might concede deficiencies in [Boucher's] proposal that [Boucher] would not admit to**." *Id*. (alteration added and citations omitted). Given these realities within the specific context of legal challenges to a public procurement process, "the possibility of those conflicts should virtually always amount to a compelling showing that [an offeror's] interests may not be adequately protected by the government[.]" *Id*.

Contrary to Penrod's assertion, federal courts have specifically highlighted that "[i]t is not enough to say that the government will defend against claims the proposed intervenor wants to oppose and resist relief the proposed intervenor wants to avoid." *Id*.; *see also Air Borealis Ltd.*

4

*P'ship v. United States*, 162 Fed. Cl. 778, 782 (2022) ("While the government may well represent citizens when it comes to sovereign interests, the **government's interest in receiving contractual performance and defending its decisions during a procurement is distinct from a contractor's interest in receiving an award and being paid**"). Instead, the Federal Circuit has cogently explained "that what really matters" in the context of intervention by a public contract awardee in a case challenging the validity of the awardee's public contract "is the parties' precise motivations to raise particular arguments in their own ways," and that "parties with different interests (e.g., a bidder and a government agency)" will make different decisions "about what to emphasize and what to downplay; what to defend and what to concede; what to cite and what to omit; what to include and what to cut." *Superior*, 171 Fed. Cl. at 54.

Similarly, Florida courts have applied the exact same reasoning with respect to the intervention of public contract awardees in challenges to public contracts in the context of state and local government contracts. *John G. Grubbs, Inc. v. Suncoast Excavating, Inc.*, 594 So. 2d 346, 348 (Fla. 5th DCA 1992) (holding that "the **trial court abused its discretion in failing to allow [public contract awardee] to intervene to assert its claim of a valid contract with the County**" in case where the ultimate question was "whether the bidding process was flawed so that the contract between the County and [public contract awardee] . . . is void."); *see also Consultech of Jacksonville, Inc. v. Dep't Of Health*, 876 So. 2d 731, 732 (Fla. 1st DCA 2004) (noting intervention of public contract awardee in legal challenge to validity of Florida state public procurement process leading to awardee's public contract); *L.B. Bryan & Co. v. Sch. Bd. of Broward Cnty.*, 746 So. 2d 1194, 1196 (Fla. 1st DCA 1999) (noting intervention of public contract awardee of Florida county school board contract in legal challenge to validity of school board's procurement process leading to awardee's public contract); *GTECH Corp. v. State Dep't of Lottery*,

5

737 So. 2d 615, 618 (Fla. 1st DCA 1999) (noting intervention of public contract awardee in legal challenge to Florida state procurement process that gave rise to awardee's public contract). As is the case for Boucher with respect to this Court's resolution of Penrod's claims, Florida's Fifth District Court of Appeals has previously acknowledged that resolution of a legal challenge to a Florida local government's public contracting process "will directly and immediately affect [the awardee of the public contract at issue] and [the awardee of the public contract at issue] will gain or lose by the direct legal operation and effect of the court's ruling." *Id*.

In this case, it is undisputed that Boucher is not only the designated awardee under the City procurement process that forms the basis of Penrod's claims, but has executed the subject City contract and been performing under it for months – including through the expenditure of significant funds in furtherance of its contract performance. It is also undisputed Penrod seeks to have Boucher's City contract declared void through this action. Accordingly, Boucher has a unique and distinct interest in this action, which is not sufficiently represented by the City as explained in the multiple federal and state cases cited above.

## II.     The Motion is Timely

Boucher's Motion is timely, as it was filed just twenty (20) days after entry of the Court's operative scheduling order in this matter on March 18, 2025 [DE 128], and prior to the Court's existing deadline for addition of new parties to this action – which is two weeks after resolution of the City's pending Motion to Dismiss. In fact, the specific circumstances of this case demonstrate that Boucher has not engaged in any unreasonable delay with respect to seeking to intervene.

The operative complaint in this case, which is Penrod's Fifth Amended Complaint, was filed in August 2024. The City filed a comprehensive Motion to Dismiss the Fifth Amended Complaint in September 2024, which was fully briefed by all parties by September 30, 2024.

6

Boucher thoroughly reviewed the City's Motion to Dismiss when it was filed, which included an argument that the Fifth Amended Complaint should be dismissed due to Penrod's failure to join Boucher as an indispensable party, and believed that it conclusively established the lack of any valid cause of action within Penrod's Fifth Amended Complaint. Boucher did not move to intervene at that time, since a finding by the Court that Boucher was an indispensable party would have disposed of the issue without the need for further motion practice, and a finding to the contrary would have required more limited briefing under a permissive intervention argument. As such, mindful of not wasting judicial resources and believing in the quality of the City's Motion to Dismiss, Boucher awaited this Court's resolution of the Motion to Dismiss prior to seeking intervention. However, once the Court entered its Amended Scheduling Order on March 18, 2025 [DE 128] with the Motion to Dismiss still pending, Boucher immediately moved to intervene in this matter prior to expiration of any pre-trial deadlines - despite the fact that Boucher's sought intervention may be mooted by the Court's ruling on the City's Motion to Dismiss.

In deciding to move for intervention when it did, Boucher specifically noted that the operative Amended Scheduling Order provides that the parties may file a motion to join parties "within 14 days of the Court's Decision on Defendant's Motion to Dismiss," which has not yet occurred. Further, the above language makes clear that the Court envisioned a circumstance where parties could be added to this case even after discovery had commenced.

Penrod argues that the Motion is *per se* untimely because it was filed 18-24 months after Boucher reasonably should have known of its interest in the case, and that such "delay" is "dispositive." Resp. 5-9. This argument is directly contradicted by the Supreme Court, which has held that "[t]imeliness is an important consideration in deciding whether intervention should be allowed, but timeliness is to be determined from all the circumstances and **the point to which [a]**

7

**suit has progressed is ... not solely dispositive**." *Cameron v. EMW Women's Surgical Ctr.*, P.S.C., 595 U.S. 267, 279 (2022) (cleaned up and emphasis added). Put another way, "[t]imeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (internal citations omitted).

When, as here, the circumstances of a case dictate that there has not been any unreasonable delay in seeking intervention and the requested intervention will not cause any undue delay in the case's resolution, there is no *per se* rule as to amount of elapsed time in the case that causes a motion to intervene to be untimely. *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125–26 (5th Cir. 1970) (intervention timely one year after the original complaint because "there had been no legally significant proceedings other than the completion of discovery and [the] motion would not cause any delay in the process of the overall litigation."); *Chiles* 865 F.2d at 1213 (intervention timely seven months after complaint and three months after motion to dismiss).

In making the timeliness determination, courts must balance the length of time during which the intervenor reasonably should have known of its interest in the case with the extent of the prejudice to existing parties if intervention is granted, and the extent of prejudice to the would-be intervenor if the petition is denied. *U.S. v. Jefferson Cnty.*, 720 F.2d, 1511, 1516 (11th Cir. 1983). In a bid protest case such as here, where a winning bidder seeks to intervene in a case brought by a losing bidder to invalidate a public contract award, intervention is consistently granted to the winning bidder. *See Mitchco Int'l, Inc. v. United States*, 149 Fed. Cl. 683, 684 (2020) (allowing subcontractor of awardee to intervene where disappointed bidder claimed collusion between government and awardee); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350

(Fed. Cir. 2004); *Air Borealis Ltd. P'ship v. United States*, 162 Fed. Cl. 778, 781 (2022); *Winston-Salem Indus. for the Blind, Inc. v. United States*, 144 Fed. Cl. 644, 645 (2019). Consequently, the date on which the Motion was filed does not preclude intervention.

### III. Boucher's Intervention Will Not Delay Resolution of this Case and Will Not Unduly Prejudice Penrod

Boucher's intervention will not delay this matter in the least. Boucher has already observed depositions in this case, and will not seek to re-depose prior deponents or repeat prior depositions in any way. Further, with respect to document discovery, Boucher is aware that document discovery has already commenced in this matter, and will not serve any discovery requests that are duplicative with any other discovery requests previously served in this case by either Penrod or the City. Critically, Boucher is also fully aware of all existing pre-trial deadlines in this matter, and does not seek the extension of any existing Court deadline or any special scheduling accommodations. This case is not at issue, since the City's Motion to Dismiss is still pending, and is currently in the midst of discovery. Boucher's intervention at this time will in no way delay this case's resolution or modify the Court's existing case management deadlines.

Similarly, Boucher's intervention will in no way unduly prejudice Penrod. While Penrod claims it will be prejudiced simply because it has already started discovery, federal courts have made clear that the fact discovery has already commenced does not warrant denial of a motion to intervene. *See Army Corps of Eng'rs*, 302 F.3d at 1259–60 (granting and finding motion to intervene timely "after discovery was largely complete and the parties had agreed upon a schedule for briefing the case"). Additionally, Penrod's claim that Boucher's intervention will suddenly create a previously-unknown need to take discovery from Boucher is similarly invalid. Penrod obtained voluminous discovery from Boucher when this case was proceeding in state court, and that should obviate the need for further voluminous discovery here. Further, Penrod has been fully

9

aware since this case's inception of Boucher's relevance to the claims at issue, and has voluntarily chosen to not take any discovery from Boucher during the course of the federal proceedings. This unilateral decision by Penrod is not a valid basis for preventing Boucher's proper intervention.

### IV.    Alternatively, Boucher Should Be Granted Permissive Intervention

Boucher should also be granted leave to intervene by permission, as the same substantial interests that give Boucher a right to intervene in this case under Rule 24(a)(2) support permissive intervention under Rule 24(b). *First*, for the reasons detailed above, Boucher's Motion is timely. *Second*, if required to file a separate action to protect its contractual and economic interests and uphold the validity of the Boucher Concession Agreement, Boucher would assert that the Boucher Concession Agreement is the product of a valid and comprehensive competitive procurement process conducted by the City that satisfied all applicable procurement regulations and requirements, was validly approved by the necessary City officials, and is an enforceable contract in all respects. These assertions would require the Court to resolve questions of fact and law that are common to—and in some instances, identical to—questions raised by the existing parties. *Third*, since this case is not yet at issue and Boucher has committed to not taking duplicative discovery or seeking extensions of deadlines in the operative Scheduling Order, Boucher's intervention will not delay or prejudice the adjudication of any party's rights.

### V.    Boucher properly conferred prior to filing the Motion.

Penrod mischaracterizes Boucher's conferral prior to filing the Motion. As Penrod knows, Boucher's obligation was to reasonably attempt to confer, which it did. Penrod's inability to give a direct answer after (admittedly) being provided the basis for intervention days in advance of the Motion, and previously indicating to the Court that they would likely oppose such a motion, does not make Boucher's conferral inadequate.

**REQUEST FOR HEARING**

Pursuant to Rule 7.1(b)(2) of the Local Rules of this Court, Boucher requests a hearing on the Motion. Boucher believes that oral argument will assist the Court in understanding the public procurement-specific nuances in this case, the history of the case before it was before the Court, and will permit the Court to ask any questions of Boucher it may have. Boucher estimates that a hearing on the Motion should take no more than 15-30 minutes.

Dated:  May 6, 2025                                   Respectfully submitted,

                                                    HOLLAND & KNIGHT LLP
*Counsel for Defendant-Intervenor, Boucher Brothers Pier Park, LLC*
701 Brickell Avenue, Suite 3300
Miami, Florida  33131
Telephone: (305) 374-8500
Fax: (305) 789-7799


By:*/s/Daniel P. Hanlon*
   Miguel A. De Grandy
   Florida Bar No. 332331
   E-Mail: miguel.degrandy@hklaw.com
   Daniel P. Hanlon
   Florida Bar No. 105219
   E-Mail: daniel.hanlon@hklaw.com
   Benjamin Tyler
   Florida Bar No. 1003552
   E-Mail: benjamin.tyler@hklaw.com