UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-23362-LEIBOWITZ/AUGUSTIN-BIRCH

**PENROD BROTHERS, INC.**,

    *Plaintiff*,

v.

**CITY OF MIAMI BEACH, FLORIDA**,

    *Defendant*.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant City of Miami Beach, Florida's ("Defendant" or the "City") Motion to Dismiss Plaintiff's Fifth Amended Complaint (the "Motion") [ECF No. 72], filed on September 3, 2024. Plaintiff Penrod Brothers, Inc. ("Plaintiff" or "Penrod") submitted a Response in Opposition to the Motion (the "Response") [ECF No. 75], and Defendant submitted a Reply [ECF No. 80]. The Court has reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons stated below, the Motion [ECF No. 72] is **GRANTED IN PART and DENIED IN PART**.

I.     **LEGAL STANDARDS**

    A.  **Supplemental Jurisdiction**

Where a district court has original jurisdiction over an action, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim" if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has

original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). Thus, "[d]etermining whether the Court has supplemental jurisdiction over state law claims entails a two-step inquiry where the Court must first determine whether it can exercise its supplemental jurisdiction and then whether it *should* exercise that jurisdiction." *Ariza v. Walters & Mason Retail, Inc.*, 516 F. Supp. 3d 1350, 1357 (S.D. Fla. 2021) (cleaned up).

"Federal courts are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (cleaned up). This is true even where the district court has exercised supplemental jurisdiction over state law claims. *See Pinkert v. Schwade*, No. 11-CIV-23324, 2012 WL 3962386, at *1 (S.D. Fla. Sept. 10, 2012) ("Though a district court has exercised supplemental jurisdiction over state law claims, the court may decline to continue exercising jurisdiction over those claims[.]"). Moreover, "[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam); *see also West v. City of Albany*, 830 F. App'x 588, 596 (11th Cir. 2020) (per curiam) (noting that a "district court's decision to either retain or reject" supplemental jurisdiction over state law claims is "purely discretionary" and "not a jurisdictional matter").

The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1089. A district court may opt to remand state law claims to state court where no basis for federal jurisdiction presently exists. *See Pinkert*, 2012 WL 3962386, at *1. As announced in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), a district court should consider the factors of judicial economy, convenience, fairness, and comity before doing so. *West*, 830 F. App'x at 597. The *Gibbs* factors "may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion" to

retain or reject supplemental jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

### B. Rule 12(b)(6) Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can a complaint rest on "'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that, "[t]o survive a motion to dismiss[,] a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See, e.g., Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335–37 (11th Cir. 2012). A court is ordinarily limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See, e.g., Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *see also Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011).

## II.   BACKGROUND

Plaintiff has been a trusted and valued City of Miami Beach (the "City") partner for more than three decades, operating a world-renowned high-end beach club—Nikki Beach, located at One Ocean Drive—on city property leased to Plaintiff. [ECF No. 69 ¶ 3]. Plaintiff and the City entered into a lease agreement (the "Lease") on November 7, 1985. [*Id.* ¶ 32]. The Lease required Plaintiff to develop, construct, manage, and operate a restaurant and beachfront facility at One Ocean Drive. [*Id.* ¶ 33]. Plaintiff also entered into a Concession Agreement coterminous with the Lease's maturity allowing Plaintiff to continue operations of its beachfront operation eastward to the beach. [*Id.* ¶ 34]. The Lease expires on May 6, 2026. [*Id.* ¶ 37].

The City is required by law to submit its multi-million-dollar One Ocean Drive project to a formal and public competitive bidding process. [*Id.* ¶ 4]. Plaintiff alleges that the City chose to circumvent these procurement requirements by not having a competitive bidding process and instead directly awarding control over the One Ocean Drive property (the "Property") to a competitor, Boucher Brothers Miami Beach, LLC ("Boucher"). [*Id.* ¶ 55]. On October 26, 2022, the City Commission referred discussion of the upcoming expiration of Plaintiff's agreements to the City's Finance and Economic Resilience Committee ("FERC"). [*Id.* ¶ 67]. At the January 27, 2023 FERC meeting, City Commissioners introduced an agenda item to fast track a process to find a new operator for the Property. [*Id.* ¶ 68]. On April 21, 2023, the City Manager issued a memorandum advising the City that it was legally required to "follow the formal competitive solicitation process and issue a Request for Proposals ("RFP") for the best possible use and viable concepts" for the Property. [*Id.* ¶ 70].

At the April 21, 2023 FERC meeting, despite the City Manager's prior memorandum, FERC proposed to the full Commission a resolution requiring the City Manager to negotiate a term sheet exclusively with Boucher for the lease, services, and operation of the Property. [*Id.* ¶ 72]. FERC's recommendation was discussed at an April 28, 2023 Commission meeting. [*Id.* ¶¶ 73–74]. At that

meeting, the Commissioners conceded that the recommended process was unorthodox but allowed Boucher an opportunity to offer its proposal without accepting proposals from other prospective bidders, including Plaintiff. [*Id.* ¶ 74]. If later approved by the Commission, accepting the Boucher proposal could result in an award of the project without competitive bidding. [*Id.*].

During the April 28, 2023 meeting, the City Commission passed Resolution 2023-32586 (the "April 28 Resolution"), which authorized the City's Administration to: (a) negotiate a proposed non-binding term sheet with Boucher with respect to the potential management or operation of the Property, to be effective after the expiration of the Lease; (b) recommend accomplishing the contracts contemplated by the term sheet through "amendment to" Boucher's already-existing concession agreement(s) with the City "or as a stand-alone agreement;" (c) consummate the contract for lease and services at the Property after review and approval of the term sheet by the Mayor and Commission; and (d) do so "in accordance with Section 1.03(f) of the City Charter," meaning without the requisite public referendum. [*Id.* ¶¶ 75–76].

Plaintiff then filed suit on May 12, 2023, to invalidate the April 28 Resolution that limited negotiations to Boucher and to ensure its ability to participate in a public, formal competitive solicitation process. [*Id.* ¶ 80]. On May 17, 2023, the Commission passed Resolution No. 2023-32612 (the "May 17 Resolution"), which rescinded the April 28 Resolution and directed the City Administration to prepare and issue a request for proposals for the management or operation of a high-end beach establishment at the Property. [*Id.* ¶ 81]. The May 17 Resolution directed the City Administration to issue the request for proposals no later than June 15, 2023, with a deadline for submission of proposals no later than August 15, 2023, to make a recommendation for award of the RFP at the September 2023 City Commission meeting. [*Id.* ¶ 89].

On June 14, 2023, pursuant to the May 17 Resolution, the City issued RFP No. 2023-479-KB (the "RFP"). [*Id.* ¶ 90]. On July 31, 2023, Plaintiff protested the specifications and procedures in the

5

RFP. [*Id.* ¶ 126]. On August 4, 2023, the City granted in part and denied in part Plaintiff's protest and specifications challenge, admitted to certain errors in the originally-issued request and specifications, and reissued the RFP with certain amendments and addenda, as well as an extension of the submission deadline to August 29, 2023. [*Id.* ¶ 129]. On August 15, 2023, Plaintiff protested the specifications and procedures in the reissued RFP and addenda. [*Id.* ¶ 155]. On August 18, 2023, the City denied Plaintiff's bid specifications protest in full; the City also extended the deadline to submit bids to August 31, 2023. [*Id.* ¶¶ 158–59].

With the submission deadline approaching, Plaintiff requested a 24-hour deadline extension on August 30, 2023 due to the issuance of a State of Emergency by the Governor of Florida due to Hurricane Idalia. [*Id.* ¶ 172]. The City denied that request. [*Id.* ¶ 173]. Plaintiff then submitted its bid as instructed using the Periscope online platform prior to the August 31, 2023, 3:00 p.m. deadline. [*Id.* ¶ 174]. In advance of that deadline, Plaintiff electronically submitted and uploaded all required "Tabs (including all documents and attachments) to the Line Items operation" in Periscope which constituted its complete proposal submittal under the RFP. [*Id.* ¶ 175]. Also before the deadline, Plaintiff selected the "confirmation" button on the Periscope platform, and its bid on Periscope was "confirmed." [*Id.* ¶ 176]. However, Periscope did not generate a confirmation. [*Id.*].

Plaintiff suspected error and immediately and urgently contacted the provider and the City and made numerous submissions of copies of its bid by other means (including email, ShareFile, and hand-delivery). [*Id.*]. The City refused to accept Plaintiff's timely bid on Periscope, refused to address Plaintiff's identification of error in the City's submission platform, and refused to accept Plaintiff's multiple courtesy/backup copies. [*Id.* ¶ 179].

On August 31, 2023, Plaintiff, by letter to all relevant City administrative and political officials, explained its timely submission, noted its earlier extension request, and requested acceptance of its timely submission. [*Id.* ¶ 180]. On September 1, 2023, the City, by letter, denied that request and

6

continued to refuse to accept or consider Plaintiff's bid. [*Id.* ¶ 181]. That same day, Plaintiff protested the City's solicitation decisions to deny and refuse to accept or consider Plaintiff's bid. [*Id.* ¶ 183]. Less than 15 minutes later, the City through the City Attorney summarily denied the protest. [*Id.* ¶ 187]. On September 7, 2023, the City sent a longer letter reiterating its denial of the protest. [*Id.* ¶ 188].

The City accepted three bids as timely submitted for Option 1 (an option for up to 10 years) and four bids timely submitted for Option 2 (an option for up to 30 years). [*Id.* ¶¶ 116, 191]. Boucher submitted multiple bids: one was the pre-negotiated proposal joined with Major Food Group, and another was part of a competing bidder's proposal. [*Id.* ¶ 192]. On September 11, 2023, the City's evaluation committee met and issued its results ranking the Boucher/Major Food Group bid highest for both Option 1 and Option 2. [*Id.* ¶¶ 193, 200]. On September 20, 2023, the City Manager issued her recommendation comparing the proposed Option 1 and Option 2 submissions and ultimately recommended Boucher's Option 1 for award of the RFP. [*Id.* ¶ 201]. On September 27, 2023, the City Commission met, and in Resolution No. 2023-32783 (the "September 27 Resolution"), voted to award the RFP to Boucher. [*Id.* ¶ 202].

On October 16, 2023, Plaintiff protested the City's award of the RFP to Boucher and protested the proposed award of the negotiated lease/concession contract to Boucher. [*Id.* ¶ 208]. On October 17, 2023, the City responded to and denied Plaintiff's protests. [*Id.* ¶ 221]. On October 18, 2023, the City Commission met, and by Resolution No. 2023-32825 (the "October 18 Resolution"), voted to award the publicized contract to Boucher. [*Id.* ¶ 207].

Plaintiff then brought this case alleging that the City's Charter- and Code-violative and defective process yielded the intended results—selection of the City's pre-selected no-bid vendor and proposal. [*Id.* ¶ 222]. The Complaint alleges the following counts:

Count I – Procedural Due Process, 42 U.S.C. § 1983 (No-Bid Process);

7

   Count II – Procedural Due Process, Art. 1. Sec. 9 Fla. Const. (No-Bid Process);

   Count III – Violation of Charter/Code (No-Bid Process);

   Count IV – Declaratory Judgment (No-Bid Process);

   Count V – Substantive Due Process, 42 U.S.C. § 1983 (No-Bid Process);

   Count VI – Substantive Due Process, Art. 1. Sec. 9 Fla. Const. (No-Bid Process);

   Count VII – Violation of Charter/Code (Specifications Challenge);

   Count VIII – Declaratory Judgment (Specifications Challenge);

   Count IX – Injunction (Specifications Challenge);

   Count X – Violation of Charter/Code (Submission Challenge);

   Count XI – Declaratory Judgment (Submission Challenge);

   Count XII – Injunction (Submission Challenge);

   Count XIII –Substantive Due Process, Art. 1. Sec. 9 Fla. Const. (Submission Challenge);

   Count XIV – Violation of Charter/Code (Award Challenge);

   Count XV – Declaratory Judgment (Award Challenge); and

   Count XVI – Injunction (Award Challenge).

[*See id. generally*].

   This Complaint is the City's Fifth Amended Complaint. [*Id.*]. This Complaint was filed after this Court adopted United States Magistrate Judge Panayotta Augustin-Birch's Report and Recommendation on Defendant's Motion to Dismiss Fourth Amended Complaint (the "R&R"). [*See* ECF No. 59; ECF No. 44]. In her R&R, Magistrate Judge Augustin-Birch recommended the following: (1) Defendant's Motion to Dismiss Fourth Amended Complaint be denied insofar as it requests Plaintiff's claims be dismissed for lack of standing because Plaintiff was entitled to conduct discovery into matters that could affect standing; (2) Plaintiff's Fourth Amended Complaint be dismissed without prejudice for Plaintiff to replead its claims because the Fourth Amended Complaint

8

was a shotgun pleading where each count adopted the allegations of all preceding counts; and (3) Defendant's Motion to Dismiss Fourth Amended Complaint be denied without prejudice insofar as it challenges individual counts because it was not clear which of Plaintiff's allegations were incorporated into each count. [*See* ECF No. 44 at 10]. Thus, the R&R did not address the merits of each of Plaintiff's claims as it was not clear which factual allegations supported each count. Now that the Complaint is no longer a shotgun pleading, the Court has an opportunity to address the merits of Plaintiff's claims.

### III. DISCUSSION

Defendant moves to dismiss with prejudice Plaintiff's Fifth Amended Complaint (the "Complaint") [ECF No. 69] pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. [ECF No. 72 at 4]. Defendant removed this action to this Court based on federal question jurisdiction because the Complaint alleged two federal claims pursuant to 42 U.S.C. § 1983. [ECF No. 1 ¶ 2]. Thus, the Court will first determine whether Plaintiff has stated valid federal claims before moving to the other bases for dismissal to ensure the Court has subject-matter jurisdiction over this action.

#### A. Count I – Procedural Due Process, 42 U.S.C. § 1983 (No-Bid Process)

Count I alleges that "Plaintiff has a liberty and property interest to participate in, to apply for, and to be considered for, public procurement projects within the City, on full, fair and equal consideration to all participants." [ECF No. 69 ¶ 226]. Count I further alleges that "the City deprived Plaintiff of its liberty and property interests, including by preparing and enacting the April 28 Resolution, which circumvented mandatory procedural protections" and that "the City's policy, including the April 28 Resolution, denied and did not afford Plaintiff notice and an opportunity to be heard, both prior to and after the deprivations of those protected interests, by authorizing

circumvention of competitive solicitation procedures, direct negotiation exclusively with a preferred prospective bidder, and award to that bidder, all absent participation by Plaintiff." [*Id.* ¶ 228–29].

Defendant argues that the Complaint fails to state a claim for a violation of procedural due process over the now-rescinded April 28 Resolution that forms the basis of Count I. [ECF No. 72 at 18]. In support of this, Defendant argues that (1) Plaintiff lacks a protectable property interest in the City's procurement projects; (2) the April 28 Resolution did not violate the City's Charter or Code; (3) Plaintiff has failed to allege a completed deprivation of due process; and (4) Plaintiff has failed to sufficiently allege the violation of a protectable liberty interest. [*Id.* at 18–22]. Plaintiff argues in response that Defendant misunderstands its claims. [ECF No. 75 at 46–49]. Plaintiff argues instead that (1) Penrod has a protected liberty interest in the Code's procedural guaranties; and (2) nothing the City provided post-deprivation cured its pre-deprivation abandonment of due process. [*Id.*].

The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in "life, liberty or property" without the due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Due Process Clause provides two types of constitutional protection: procedural due process and substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). To demonstrate a procedural due process violation, a plaintiff must allege "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993).

Thus, to state a cognizable procedural due process claim, Plaintiff must first allege a constitutionally protected interest in life, liberty, or property. The Complaint states in Count I that "Plaintiff has a liberty and property interest to participate in, to apply for, and to be considered for, public procurement projects within the City, on full, fair and equal consideration to all participants." [ECF No. 69 ¶ 226]. Defendant argues in its Motion that Plaintiff lacks a protectable interest in the

10

City's procurement projects on the basis that the procedural component of the Due Process Clause does not require the City to comply with City-created procedural rules. [ECF No. 72 at 18–20]. Plaintiff argues in response that Defendant misunderstands Plaintiff's claims. [ECF No. 75 at 46]. Plaintiff notes that "[i]t is uncontroversial that constitutional due process does not, itself, require compliance with specific state- and municipal-level procedures; as the City well knows, Penrod does not claim otherwise." [*Id.*]. Instead, Plaintiff contends that it "has a protected liberty interest in the Code-mandated competitive bidding procedures themselves—and the City deprived Penrod of that interest without the minimum constitutional requirement of non-emergent pre-deprivation notice and a hearing." [*Id.*]. Although the Complaint alleges that Plaintiff has both a protected liberty and property interest, Plaintiff rests its arguments in its Response on the fact that Plaintiff has a protectable liberty interest in the Code-mandated competitive bidding procedures themselves and says nothing about an alleged property interest. [*Id.*].

"Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006). "Whether these sources create a property interest must be decided by reference to state law." *Id.* Likewise, state law can give rise to a liberty interest for purposes of procedural due process when state-created procedures place substantive limitations upon official discretion. *E.g.*, *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 461–62 (1989); *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983); *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Plaintiff agrees that "the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." *Maddox v. Stephens*, 727 F.3d 1109, 1124 n. 15 (11th Cir. 2013); [*see* ECF No. 75 at 46 ("It is uncontroversial that constitutional due process does not, itself, require compliance with specific state- and municipal-level procedures; as the City well knows, Penrod does not claim otherwise.")]. However, Plaintiff cites

11

no Florida state law to support its allegation that it has a protected liberty or property interest in the Code-mandated competitive bidding procedures themselves, and the Court is not aware of any.

Plaintiff also notes that while the Eleventh Circuit has yet to opine directly on liberty interests in state-created procurement procedures, relevant precedent strongly supports the constitutional requirement of notice and a hearing before eliminating such procurement procedures. [ECF No. 75 at 46–47]. The Court disagrees with Plaintiff that the cases it cites support its arguments for notice and a hearing because the interests at stake in those cases differ from any alleged liberty or property interest here. One case Plaintiff cites, *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238, 1244 (11th Cir. 1992), recognizes that "the Georgia Supreme Court has long recognized a constitutionally protected property interest in the award of a contract under competitive bidding statutes and rules," such that Department of Corrections "officials knew or should have known that they deprived plaintiffs—as lowest responsible bidders—of a property interest by ignoring statutory and regulatory directives." However, Florida does not recognize that same protected property interest, so the analysis of Georgia law in *Pataula* is not helpful here. *See P'ship For Cmty. Health, Inc. v. Dep't Of Child. & Fams.*, 93 So. 3d 1191, 1193 (Fla. Dist. Ct. App. 2012) (A plaintiff "has no constitutionally protected property interest in a contract which was not awarded to it.").

Another case Plaintiff cites notes that "[i]n the context of bidding contracts, courts have generally found that a bidder has a property interest in a contract 'only if the bidding procedures are sufficiently explicit and the decisionmaker's discretion is sufficiently limited to entitle the bidder to receive the contract if it satisfies a certain set of conditions.'" *Grace & Naeem Uddin, Inc. v. North Broward Hosp. Dist.*, 2013 WL 3313443, at *3 (S.D. Fla. July 1, 2013) (citing *City–Wide Asphalt Paving v. Alamance Cnty.*, No. 2:96CV66, 1996 U.S. Dist. LEXIS 14428, at *7 (M.D.N.C. Aug. 12, 1996)). In *Grace*, the court found that the plaintiff stated a valid procedural due process claim under 42 U.S.C. § 1983 where a Florida statute mandated that defendant award the contract at issue to the lowest

12

qualified and responsive bidder, which plaintiff claimed it was but was not awarded the contract. *Id.* at *2, *5. Here, however, there are no allegations that the City conducted a bidding process or awarded a contract where Plaintiff was deprived of a similar property interest as the one found in *Grace*.

Plaintiff has provided no authority persuasive to this Court to support its argument that it has a protected liberty interest in the Code-mandated competitive bidding procedures. Plaintiff lastly argues that "if the City is correct and the extent of Penrod's constitutional rights is unsettled, dismissal is especially inappropriate." [ECF No. 75 at 47]. The Court disagrees. The law is not unsettled; rather, Plaintiff's argument is without support under Florida law.

Therefore, the Court agrees with Defendant that Plaintiff has not alleged a protectable property or liberty interest to state a claim for a procedural due process violation under 42 U.S.C. § 1983. Thus, the Motion is granted as to Count I, and Count I is dismissed.

### B. Count V – Substantive Due Process, 42 U.S.C. § 1983 (No-Bid Process)

Count V alleges that "Plaintiff has state-created liberty and property interests and rights protected by the federal Constitution to participate in, to apply for, and to be considered for, public procurement projects within the City, on full, fair and equal consideration to all participants." [ECF No. 69 ¶ 255]. Count V further alleges that "[t]he City's actions in violating Plaintiff's rights were done in part by and included the City Commission's planning and formal adoption of the April 28 Resolution, which is a legislative act," and that "[t]he City deprived Plaintiff of its constitutionally protected rights in violation of law mandating formal competitive solicitation procedures, which both *per se* and in fact renders such actions done for no legitimate purpose, and for reasons that were corrupt, arbitrary, capricious, and with no conceivable legitimate economic or rational basis." [*Id.* ¶¶ 261–62].

Defendant argues that Count V fails to state a claim for a violation of substantive due process pertaining to the now-rescinded April 28 Resolution. [ECF No. 72 at 22–25]. In support of this,

13

Defendant argues that (1) Penrod's substantive due process claims are based on an executive deprivation of rights set forth in the City Charter and Code and therefore, are not cognizable; and (2) in the alternative, the City's challenged conduct passes the highly deferential rational-basis test. [*Id.*]. In response, Plaintiff argues that (1) because the City abrogated Penrod's state-created rights to competitive procurement by legislative act, Penrod properly claims protection by the federal Constitution's guaranty of substantive due process; and (2) the City's abrogation of its Charter and Code obligations and protections fails rational basis review because it was both arbitrary pretext to give the property to a political insider and donor and inherently irrational because the decisions violated the City's own Charter and Code. [ECF No. 75 at 41–46].

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty[.]'" *McKinney*, 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). "Fundamental rights are those rights created by the Constitution." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014). "Property interests, of course, are not created by the Constitution[, but rather] … by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002). "As a result, there is generally no substantive due process protection for state-created property rights." *Kentner*, 750 F.3d at 1279. "There is, however, at least one exception to [the Eleventh] Circuit's general rule that there are no substantive due process claims for non-fundamental rights." *Id.* "Where a person's state-created rights are infringed by a 'legislative act,' the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action." *Id.* at 1279–80.

"There is no dispositive test to determine which actions are executive and which are legislative, because local governing bodies often do both." *Id.* However, "[e]xecutive acts typically arise from

14

the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one." *Id.* "Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society." *Id.* (quoting *McKinney*, 20 F.3d at 1557 n.9). "A legislative act also involves policy-making rather than mere administrative application of existing policies." *Id.* "[L]aws and broad-ranging executive regulations are the most common examples." *Id.* (quoting *McKinney*, 20 F.3d at 1557 n.9).

Even if Plaintiff had alleged a protectable liberty or property interest (and it has not), the Court would find that Plaintiff has not alleged a substantive due process violation here. A "legislative act" must be at issue for Plaintiff to allege a substantive due process violation. Although the Complaint states that the April 28 Resolution was a "formal legislative act" [ECF No. 69 ¶ 75], the Court disagrees. Based on the legal distinction between legislative and executive acts and the Court's review of the Complaint, the April 28 Resolution was an *executive* act. Legislative acts typically apply to a larger segment of society, and the April 28 Resolution (authorizing the City Administration to negotiate a proposed non-binding term sheet with Boucher) only applied to Boucher and involved one site of public property. *See* F*lagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.*, 559 F. App'x 811, 816 (11th Cir. 2014) ("The City's decision was a 'textbook executive act' because it affected only [plaintiff]."); *Flint Elec. Membership Corp. v. Whitworth*, 68 F.3d 1309, 1313 n.4 (11th Cir. 1995), *modified*, 77 F.3d 1321 (11th Cir. 1996) (characterizing as executive the selection according to state procurement laws of a bidder for a state contract); *see also Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty., Ga. by & through Chairman & Members of Brantley Cnty. Bd. of Commr's*, 559 F. Supp. 3d 1345, 1374 (S.D. Ga. 2021) (finding that defendants' rezoning decision constituted an executive action as it applied only to plaintiff and its property rather than the residents of the county at large). Thus, it was an executive act. Because the April 28 Resolution was an executive act, it cannot support a substantive due process claim under 42 U.S.C. § 1983. Thus, the Motion is granted as to Count V, and Count V is dismissed.

### C. Supplemental Jurisdiction (remaining state law claims)

Defendant's Motion to Dismiss is granted as to Count I and Count V. Because the Court finds that both federal claims in the Complaint over which this Court has original subject matter jurisdiction are due to be dismissed, the Court no longer has subject-matter jurisdiction. Having disposed of these claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. A district court may decline to exercise its supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The dismissal of state law claims is strongly encouraged when federal law claims are dismissed prior to trial. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). Moreover, the *Gibbs* factors support the Court declining to exercise supplemental jurisdiction over the state law claims.

Concerns of comity here weigh heavily in favor of dismissal. The Complaint now consists entirely of state causes of action that would be more appropriately resolved by a Florida state court. *Pinkert*, 2012 WL 3962386, at *2; *see also Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) ("State courts, not federal courts, should be the final arbiters of state law in our federalist system." (cleaned up)). Moreover, it would not inconvenience the parties for the state law claims to be litigated in state court as the parties initially litigated this case in state court. As to judicial economy, the Court has not yet considered the issues raised in the state law claims nor have the parties argued these issues before the Court. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th Cir. 2006) ("Having a state court rehash issues that have already been argued in federal court is far more likely to cause multiplicity in litigation[.]"). Finally, Plaintiff is free to refile its remaining claims in state court. *See Zen Grp., Inc. v. Harris*, No. 1:20-CV-23218, 2021 WL 6802922, at *2 (S.D. Fla. Dec. 29, 2021) (citing *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-CIV-21244, 2018 WL 1729757, at *11 (S.D. Fla. Apr. 10, 2018) ("However, the question of whether [p]laintiffs could timely bring its state law claims in state court is a non-issue. This is because § 1367(d) tolls the statute of limitations for state

claims during the period in which they have been pending in federal court and for 30 days after an order of dismissal."); 28 U.S.C. § 1367(d)).

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Moreover, having disposed of all of Plaintiff's federal claims on the grounds articulated above, the Court need not and does not address any of the other arguments made in the Motion.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [**ECF No. 72**] is **GRANTED** to the extent that it is directed to the claims brought pursuant to 42 U.S.C. § 1983, and **DENIED** to the extent that it is directed to the claims brought pursuant to Florida law.

2. Counts I and V of the Complaint pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

3. The Court declines to exercise supplemental jurisdiction over Plaintiff's claims pursuant to Florida law and such claims (Counts II, III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, and XVI) are **DISMISSED WITHOUT PREJUDICE**.

4. Any pending motions are **DENIED AS MOOT**.

5. All deadlines are **TERMINATED**.

6. The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**DONE AND ORDERED** in the Southern District of Florida on June 10, 2025.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record